## Rebecca Adams et al. v. A. H. Bartell.

Decided May 8, 1907.

**1.—Promissory Note—Attorney's Fee—Pleading and Proof.**

Where a promissory note stipulates for an attorney's fee if the note is placed in the hands of an attorney for collection, in case of suit upon the note it is necessary to plead and prove that the same has been so placed. But if the stipulation is that the attorney's fee shall be paid in case suit is brought on the note, it is not necessary to plead or prove the suit, for that fact is established by the proceeding itself.

**2.—Debt of Ancestor—Assumption by Heirs.**

Although heirs may not be liable for the debts of their ancestor, still if they assume the same by executing their note therefor with mortgage upon land inherited from such ancestor which otherwise would be exempt, they thereby make such debts their own and their obligation may be enforced.

**3.—Pretended Vendor's Lien—Knowledge of Facts—Homestead Exemption.**

Evidence considered, and held to show that the purchaser of a note purporting to have been given for the purchase money of land, knew that such was

not the fact, and that the land on which a lien was given to secure the note, was the homestead of one of the makers.

#### 4.—Widow—Mortgage of Homestead.

A widow may mortgage her homestead.

#### 5.—Specific Lien—Pleading and Proof.

The designation by a plaintiff of the lien, which he seeks to have foreclosed, as a vendor's lien, will not preclude the court from foreclosing the lien, though it prove to be a mortgage lien.

#### 6.—Homestead—Foreclosure of Lien—Wife not Necessary Party, When.

In a suit to foreclose a lien upon the homestead, the wife is not a necessary party when her homestead right could not defeat the foreclosure.

#### 7.—Married Woman—Judgment Against.

It is error to render a personal judgment against a married woman who is sued with her husband for a community debt.

#### 8.—Incumbrance—Adjustment of Equities.

Out of a tract of land incumbered by mortgage the children conveyed to the surviving widow a certain number of acres in severalty in consideration of her releasing her homestead claim to the remainder of the land. In a suit by the creditor to foreclose the mortgage it was error to charge the portion of the land relinquished to the children with the debt, and exempt that set aside to the widow, in the absence of evidence that the children had assumed the payment of the mortgage debt.

Appeal from the District Court of Brazoria County. Tried below before Hon. Wells Thompson.

*Munson & Munson,* for appellants.—Attorney's or collection fees can not be recovered in a suit upon a note unless a provision to that effect is embodied in the note itself and it is alleged in the pleading and proven upon the trial that such provisions in the note as to payment of attorney's or collection fees have been complied with. Maddox v. Craig, 80 Texas, 600.

A married woman living with her husband on his separate land, claiming, using, occupying and enjoying the same as a homestead, and having no other, is a proper and necessary party to a suit to foreclose a lien upon said homestead, to have the same sold, and the husband and wife dispossessed. Swearingen v. Bassett, 65 Texas, 267; Mexia v. Lewis, 12 Texas Civ. App., 102; Tracy v. Harbin, 89 S. W., Rep., 1000; Griffie v. Maxey, 58 Texas, 211.

A personal judgment can not be rendered against a married woman unless the same has been contracted by her for necessaries of life, or for the preservation and safe keeping of her separate estate. Smith v. Wilson, 32 S. W. Rep., 434; Sigal v. Miller, 25 S. W. Rep., 101'

*E. N. Krause* and *W. S. Sproles,* for appellee.

JAMES, CHIEF JUSTICE.—The petition of Bartell was to recover on a note, expressing a vendor's lien on land, and to foreclose the lien.

The answers consisted of a general denial and special matters summarized in appellants' brief as follows: They denied that the note

was for purchase money of the land, denied that the land was liable for the payment of the note, claimed homestead on the land, and that the land had descended to them freed from any and all debts for which it was given. We shall add to this statement of what the answer set up, in order to present the issues more clearly.

Defendants alleged that they were the children of July Adams by his first wife, Evaline, and that the land in question was community property of that marriage. That when he died in March, 1901, the land in question was his homestead, and that he left surviving him said children and his third wife Rebecca. That he owed some debts but none for purchase money of the land or for taxes or improvements thereon and that the land descended to them freed from such debts. That W. S. Sproles, to whom the note sued on was given, was their attorney at law, and upon his advice and representation that said debts were a charge on the estate and had to be satisfied out of it, they executed to him on March 20, 1901, a deed to the land which recited as the consideration the sum of $10 and the employment of him to manage, hypothecate, mortgage or sell the land to pay said debts and their own debts not to exceed $500, which deed was recorded on March 27. That on the same day Sproles executed to them a deed, by special warranty, of the land, which was likewise recorded on March 27. The consideration of this last named deed was the vendor's lien note sued on. That said instruments were intended only as a mortgage and security for the payment of said debts. That defendants were induced to believe by Sproles that the property was subject to the debts of their father, and reposing confidence in this they executed the papers. That the whole transaction was a wrongful and illegal attempt on the part of Sproles and of plaintiff to secure the plaintiff and collect said debts, and that plaintiff had notice of the facts when he acquired the note. The prayer was that plaintiff take nothing; that defendants have judgment cancelling said instruments as a cloud on their title and for general relief. The case was tried by the court and decree was for plaintiff.

We overrule the first and second assignments of error. The note sued on was sufficiently before the court as evidence. It called for ten percent attorney's fee "in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same." Had this stipulation been simply for the attorney's fee if the note should be placed in the hands of an attorney for collection, it would have been necessary for the petition to allege that it had been so placed. Maddox v. Craig, 80 Texas, 600. But the note also made the attorney's fee payable upon default at maturity and suit brought on same. It was not necessary for the petition to allege that suit had been brought on same, for that fact was apparent and established by the proceeding itself. Kerr v. Morrison, 25 S. W. Rep., 1011; McAnally v. Vickry, 79 S. W. Rep., 858.

The other numerous assignments of error relate to the judgment as not being such as the testimony demanded. The judge did not file any conclusions. His judgment must be approved upon any theory of the evidence by which it can be supported. An understanding of

the testimony is therefore indispensable. The evidence shows that defendants had an interest in the property by inheritance from their mother; also that July Adams had continued to use it as homestead (it being less than 200 acres) up to the time of his death, and that defendants then became the owners of it all. Defendants did not personally owe the debts left by July Adams, amounting to about $200; they were the debts of July Adams, and it is defendants' contention that the land being his homestead when he died, his interest descended to defendants freed from said debts. We do not think a discussion of this particular question at all necessary, because if correct, the fact is that they themselves gave the note with a lien upon the land and thereby made the debts and lien their own, and this litigation is not between themselves and Sproles but with a third party, who, as we shall see hereafter, occupies the position of an innocent purchaser of the note, as to such matters.

It was admitted by Sproles that he advised them that the debts of July Adams were a charge on his estate, and he testified he told them that the horses, mules and implements on the place were more than sufficient to pay the debts, but that they preferred to not dispose of the personalty, as it would leave them nothing to work the land with, and under these circumstances they, upon his advice, executed the papers in the form they were given for the purpose of satisfying the debts. According to Sproles' testimony, the debts so to be discharged consisted of a judgment held by Bartell against July Adams, amounting to about $100 and sundry other small bills, the whole being in the neighborhood of $200, and the remainder to make up the sum of $500 consisted of a fee or retainer which they agreed to pay him to defend the estate against a litigation expected to be brought against the estate on behalf of the heirs of the second wife of July Adams, which services Sproles agreed to render and was ready to perform.

There was ample testimony to support a finding by the court in accordance with said testimony of Sproles, which, if the court believed, as it had the right to do, is conclusive upon us as to his good faith, and the absence of actual fraud on his part. Defendants certainly had the right to make a contract in reference to such matters, and whether they were obligated to pay their father's debts or not, they had a right to adopt and undertake to pay them and give a lien upon their property in respect to them. It may be that Sproles was mistaken in his advice to them, and that the papers were executed by defendants under such a mutual mistake, as would have entitled them in a controversy with him, to have them set aside. But this controversy is not with Sproles, but with a third party who claims to be an innocent purchaser of the note.

We would be bound, in the absence of any finding, to conclude that the court found Bartell to have been an innocent purchaser if there was evidence from which it could have made such finding. The recitals of the decree indicate that the court so found. The testimony was sufficient to support a finding that he had no notice that the papers had been given under a mistake or under any other circumstances constituting a defense against the note in whole or in

part. Whether or not he had sufficient knowledge to put him upon inquiry as to such a defense or defenses was at most, a question of fact, not of law; and in deference to the judgment of the court we are bound to find that such matter has been settled against defendants.

However, while the evidence would support a finding that Bartell did not know of any mistake, or imposition, or otherwise than that defendants owed the money and had voluntarily obligated themselves to pay the amount of the note, there was, we think, enough in the evidence to show clearly that he knew the note was not really a vendor's lien on the property, but that it was nothing more than an ordinary mortgage. The evidence which we think indubitably leads to this conclusion is that when Sproles, about a week after the note had been given, offered it to Bartell, and told him it was good paper, Bartell said he would buy it if a sufficient deduction was made for his money to pay him ten percent instead of eight percent, and also pay his judgment. This was done and he took the note, paying about $380 in money. The fact is that although the note purported to be property of Sproles for land conveyed by him to the makers thereof, Bartell proposed as a condition to its purchase the deduction of the amount of the judgment he had against July Adams. This shows that he understood, or had explained to him by Sproles, the purpose for which the note and lien had been given, that it was to raise money to pay certain debts, including Bartell's judgment, and that it was not, in fact, a vendor's lien. How else can it be explained that Bartell would receive the idea that his judgment should go in as part of the purchase price of the note? The instruments in reality constituted no vendor's lien and their legal effect was simply to create an ordinary lien on the property and Bartell must have understood this. Under these circumstances his case must stand or fall upon the theory of a mortgage, just as if the paper had so expressed the lien. Knowing the true nature of the instruments to be that thereby the property had been merely mortgaged by defendants, the law charged him with knowledge of the fact, if it was a fact, that those giving the mortgage were at the time living upon the land as their homestead. Such was the status of the defendant, Gabriel Adams, who was married and living upon the land at the time, and against him plaintiff is for this reason not entitled to assert a lien.

The case is different as to the other defendants. Rebecca Adams was the widow of July Adams, and she could mortgage even her homestead. Henry Adams, Sarah Harvey and Caroline Hall were unmarried at the time and had no homestead right. The other defendant, Charlotte Wilson, and her husband, were not living upon this land at the time. But while the law charged him with knowledge of the fact of homestead because he was dealing with what he must have known was only a mortgage, it does not follow that he was also charged with knowledge of other defenses which defendants may have had against the note. These views lead us to sustain the judgment, giving plaintiff a lien against the interests of all the defendants, with the exception of that of Gabriel Adams.

The above remarks dispose of what is material to the case and

involved in the assignments of error Nos. 3 to 10, inclusive. We overrule the eleventh and fifteenth assignments for the reason that we have agreed with appellant that the note was not a vendor's lien note, even in plaintiff's hands, but was only a mortgage, and for the further reason that it is our opinion that a person *sui juris* may give his obligation for a debt that he personally does not owe, and in the hands of an innocent purchaser, the consideration can not be questioned, and for the further reason that the form in which the mortgage was made, viz., through their attorney and legal adviser, did not invalidate it as a matter of law.

The twelfth assignment and propositions thereunder will be disposed of by stating first, that we have held that the note can not be treated as a vendor's lien; second, that we have held that the effect of the instruments and the form of the transaction had the effect of creating a mortgage, as was intended.

The proposition under the thirteenth assignment is overruled for the reason that the court must have found the facts referred to against defendants, and for the further reason that such matters would not be available against an innocent purchaser of the note, which fact the court must also be taken to have found. And this finding being taken into consideration the fourteenth assignment should also be overruled. Our reasons for upholding the conclusion of the trial court that plaintiff was an innocent purchaser, have been given. The sixteenth again attacks the consideration of the note, and this it is not necessary to further discuss. We have sustained the seventeenth assignment by holding that upon the interest of Gabriel Adams plaintiff can assert no lien. And we must overrule it as to Caroline for the reason that she was unmarried at the time she executed the papers.

The eighteenth assignment is that the court erred in rendering judgment for plaintiff for the reason that the suit was brought to foreclose a vendor's lien, and the testimony developed the fact that there was no vendor's lien. This is overruled. We know of no rule of practice which would preclude the foreclosure of an ordinary lien, simply because pleaded as a vendor's lien. Plaintiff was nevertheless endeavoring to enforce a lien.

What has been said in this opinion disposes of the nineteenth. A discussion of it would be repetition.

The twentieth is that the court erred in rendering judgment against Sarah Adams, wife of Henry Adams, for the reason that she did not sign the note and was not made a party defendant. It appears she did not sign the note; that Henry Adams had not married her at the time the note was given. Nor was she a party to the suit. This assignment is therefore sustained.

The twenty-first is that the court erred in decreeing the interest of Henry Adams sold, for the reason that at the time of filing this suit he was married to Sarah Adams and they were living upon his one-fifth part on this land as their home, and she was therefore a necessary party to a foreclosure thereon. She was not a necessary party. Jergens v. Schiele, 61 Texas, 255; Central Coal Co. v. Henry, 47 S. W. Rep., 281.

The twenty-second is that the court erred in rendering any judg-

ment for any amount against Virginia Adams, Sarah Adams, Charlotte Wilson, Caroline Hall and Sarah Harvey for the reason that each of them was a married woman and said judgment was not rendered for any debt or obligation for which they or either of them were liable. Sarah Adams was for reasons already given not subject to any judgment in this case. Virginia was the wife of Gabriel Adams when she signed the note, and as her husband's interest was not subject to any lien, the judgment against her personally or on foreclosure was improper. Charlotte Wilson was the wife of Jack Wilson when she signed, so no personal judgment should have been rendered against her. Caroline Hall and Sarah Harvey were single when they signed, and personal judgment as well as for foreclosure against them was proper.

The twenty-third assignment complains of the decree in that it required a certain twenty acres of the land, set apart to Rebecca Adams (the widow of July Adams), to be sold after the remainder of the land had been sold, and then only in the event the remainder did not bring the amount of the judgment. It appears that defendants had given to Rebecca a certain twenty acres of the land in satisfaction of her homestead claim. It was agreed by counsel that the twenty acres "as sold by W. S. Sproles to Rebecca Adams was in consideration of the said Rebecca Adams relinquishing her right of homestead in the estate of July Adams, deceased, and in accordance with the will of said July Adams, deceased, and we agree that defendants do not claim any interest in said twenty acres, and in consideration of the relinquishment of any claim that the defendants might have in said twenty acres, the said Rebecca Adams waives her homestead right in the estate of July Adams deceased." Plaintiff alleged in this respect that "for and in consideration of the other defendants promising and agreeing to pay the $500 note and deeding to Rebecca Adams off the south side of the said 67½ acre tract the twenty acres, the said Rebecca Adams gave to them and agreed that the said Sproles should make to them a deed to all of said land deeded to them by him and that he should retain a lien for the payment of said note." There was no proof of the allegation that the other defendants agreed to assume the note. The proof was simply that she got the 20 acres in return for her abandonment of her homestead right. Under the proof we see no foundation for charging the rest of the property with the debt in favor of her 20 acres. Appellee states in his brief that the other defendants had conveyed to her the 20 acres by warranty deed, but there was no proof of such fact. We think there was error in the decree in this respect.

The twenty-fourth assignment which complains of the overruling of a motion for new trial, is not briefed so as to entitle it to notice. It refers to nothing but what is embraced in the other assignments.

The errors found by this opinion are all such as may be rectified in this court. The decree will be reformed so as to relieve the 1-5 undivided interest of Gabriel Adams from the lien; also to eliminate Virginia Adams and Sarah Adams from the judgment, also to relieve from a personal recovery the defendants Charlotte Wilson, Bellfield Hall and Green Harvey, and to foreclose a lien in plaintiff's favor

on all the land except the undivided 1-5 interest therein of Gabriel Adams.

Decree will be reformed, and entered here as in our opinion should have been rendered in the District Court.

*Reformed and Affirmed.*

Writ of error refused.