JOHANNE STEVES ET AL. v. RAFAELA R. SMITH.

Decided February 5, 1908.

**1.—Common Law Marriage—Notice.**

The relation of husband and wife brought into existence by a common law marriage is precisely the same as that which attaches to a marriage entered into in conformity to the written law, and all persons dealing with the husband are charged with the same notice of the relationship in the one case as in the other.

**2.—Marriage License—Record—Purpose.**

The record of a marriage license and the return thereon showing the marriage of the parties, is not constructive notice to third parties dealing with either spouse of his or her relation to the other. Such license and record are primarily intended for the benefit of the parties and those claiming rights growing out of their relation as husband and wife.

**3.—Marriage—Notice of—Loan on Homestead.**

One who lends money to a married man and takes a mortgage on real estate, the record title to which appears to be in him, to secure it, is not charged as matter of law with knowledge of the fact that the borrower is a married man. And if the lender has no notice that the borrower is in fact a married man, and is not charged with notice that the real estate is homestead, the mortgage will be valid as against a homestead claim.

**4.—Homestead—Designation—Prerogative of Husband.**

From the nature of the marriage relation in this State it belongs to the husband to designate the homestead. The wishes, intention and acts of the wife are immaterial.

**5.—Homestead—Designation—Evidence.**

Where a married man purchased a house and lot suitable for a home, but never occupied it and kept it rented for thirteen years to other persons, a mortgage upon the property by the husband a short time after the purchase, was valid as against the homestead claim of the wife asserted after she had been abandoned by her husband, fourteen years after the purchase.

**6.—Judgment—Recital—Presumption.**

Where a married woman, abandoned by her husband, attacks a judgment of foreclosure upon land claimed as her homestead, on the ground that she was not cited to answer the foreclosure suit and did not appear therein, a recital in the judgment that the defendants appeared "each in person" will be presumed to be true in the absence of direct evidence to the contrary, when such evidence is available. Inferences from circumstances will not be sufficient to overcome the recital and annul the judgment.

ON REHEARING.

**7.—Homestead—Notice.**

Where property is in fact a homestead, evidenced by use and occupancy, knowledge of all the facts essential to its existence is imputed to a mortgagee, and the mortgagee stands charged with notice of the fact of homestead in spite of declarations to the contrary by the borrower. But where property is not in actual use as a homestead, representations by the owner amounting to fraud will estop him from setting up the claim against persons acting on such representations in ignorance of the homestead claim.

Appeal from the 37th District Court, Bexar County. Tried below before Hon. E. Dwyer.

*Webb & Goeth* and *Shook & Vanderhoeven,* for appellants.—When. it appears that a house and lot suitable for occupancy was never at any time during the fourteen years of ownership in any manner used as a homestead, although the owner with his family continuously resided in the same city where the house was situated, and when it appears that no reason was given or could be given why the owner with his family did not so occupy and use the said house and lot at any time during the said fourteen years, such property will not constitute the homestead upon the bare statement of the wife that at the time the property was bought it was intended to be used as such. Bente v. Lange, 9 Texas Civ. App., 328, 331; Skaggs v. Mulkey, 1 Posey, U. C., 488, 496; Wilkerson v. Jones, 40 S. W. Rep., 1046; Churchwell v. Sweeney, 29 Texas Civ. App., 166, 167; Phillips v. Texas Loan Co., 26 Texas, Civ. App., 505, 510; Crabtree v. Whiteselle, 65 Texas, 111, 114; Wolf v. Butler, 8 Texas Civ. App., 468, 471; Foley v. Holtkamp, 28 Texas Civ. App., 123, 125.

A common law wife, wholly unknown to the mortgagee and not living upon the property claimed by her to be her homestead at the time the husband in whose name the title appears executes a mortgage upon such property and who represents himself to the mortgagee as a single man, can not claim the homestead exemption as against the said mortgagee. Hickman v. Hoffman, 11 Texas Civ. App., 605, 607; Sanburn v. Schuler, 3 Texas Civ. App., 629, 632; Hensley v. Lewis, 82 Texas, 595, 597; Hurt v. Cooper, 63 Texas, 362, 365; Michael v. Knapp, 4 Texas Civ. App., 464, 467; Woolfolk v. Ricketts, 48 Texas, 28, 37; Foley v. Holtkamp, 28 Texas Civ. App., 123, 125; Love v. Breedlove, 75 Texas, 649, 652; Galveston, H. & S. A. Ry. v. Walker, 85 S. W. Rep., 28, 31; Willis v. Lewis, 28 Texas, 185, 191.

When it appears upon the face of a judgment that a party appeared in person when the case was called for trial, and there is no direct evidence that such recital and adjudication that the person did so appear is not true, the court will not be warranted in setting aside such judgment many years after the judgment had been rendered. Ingle v. Bell, 84 Texas, 463, 464; East Texas Land Co. v. Graham, 24 Texas Civ. App., 521, 528; Western U. Tel. Co. v. Brooks, 78 Texas, 331, 332; Laird v. Thomas, 22 Texas, 276, 280; DeWalt v. Snow, 25 Texas, 320, 321; Chester v. Walters, 30 Texas, 53, 54; Lawler v. White, 27 Texas, 250, 253; Warren v. Foust, 36 Texas Civ. App., 59, 60; Willis v. Lewis, 28 Texas, 185, 191; Galveston, H. & S. A. Ry. v. Walker, 85 S. W. Rep., 28, 31.

The husband alone may control the dedication of a homestead for himself and family, and it is the duty of the court, when requested, to charge the jury that unless they find from the evidence that the husband intended the property as the homestead, they should return a verdict in favor of the defendants. Evans v. Daniel, 25 Texas Civ. App., 362, 364; McGaughey v. Bank, 92 S. W. Rep., 1003, 1009; Holliman v. Smith, 39 Texas, 357, 362; Brin v. Anderson, 25 Texas Civ. App., 323, 327.

It appearing conclusively from the record that at the time the decree was rendered on the 20th of January, 1898, Rafaela R. Smith

·appeared in person, and it further appearing that this suit was not instituted until December 27, 1905, appellees' cause of action was barred by the statute of limitations of four years. Rev. Civ. Stats. 1905, art. 3358; Foust v. Warren, 72 S. W. Rep., 404, 406; Warren v. Foust, 36 Texas Civ. App., 59, 60.

*Carlos Bee* and *V. M. Clark,* for appellee.—The purchase of a house and lot by the husband and wife jointly, out of the separate funds of each, for the sole purpose of making such property the homestead of the family, followed immediately by building a fence, sidewalk, raising the house and painting it, fixing the roof, planting trees in front, fixing window and door blinds, planting roses and shrubs of a permanent and lasting nature, constitute the place a homestead, within the meaning of the laws and Constitution of Texas. King v. Wright, 38 S. W. Rep., 530; Foley v. Holtkamp, 28 Texas Civ. App., 123; Barnes v. White, 53 Texas, 631; Bell v. Greathouse, 20 Texas Civ. App., 481; Cameron v. Gebhard, 85 Texas, 617; Dobbins v. Kuykendall, 16 S. W. Rep., 744; Gallagher v. Keller, 87 Texas, 474.

A marriage when legally consummated becomes a fact, and persons dealing with the husband legally married are bound by the fact of such marriage, notwithstanding the declaration of the husband that he is not married, and that such persons relied thereupon, his statement being accepted by them as true, can not affect the homestead exemption, nor the rights accruing to the family under such exemption. Robertson v. Cole, 12 Texas, 362; Ingersoll v. McWillie, 9 Texas Civ. App., 555; Holder v. State, 35 Texas Cr. Rep., 23; Chapman v. Chapman, 88 Texas, 641; Cumby v. Henderson, 6 Texas Civ. App., 524; Cueno v. De Cueno, 24 Texas Civ. App., 439.

As to notice of marriage: Watkins v. Markham, 36 S. W. Rep., 145; Sanger Bros v. Brooks, Supreme Court decision, not yet published.

A person dealing with homestead property does so at his own peril, and whether he knew or not that it is homestead property, and whether he knew or not that the person with whom he is dealing is a married man, it is his duty to know, and he can not complain that he had no knowledge. Watkins v. Markham, 36 S. W. Rep., 145; Sanger Bros. v. Brooks, Supreme Court decision not yet reported. Gallagher v. Keller, supra.

In the last cited case this court said, in discussing the case of Cameron v. Gebhard: "But if it was their homestead, it must have been so independent of this knowledge on the part of Cameron & Company; it could not be a homestead as to Gebhard and a homestead as to no one else. If a homestead it was such against the world."

NEILL, Associate Justice.—On December 27, 1905, the appellee, Rafaela R. Smith, a feme covert, whose husband, Chas. M. Smith, had deserted her, brought this suit against Johanne Steves, a feme sole, Albert Steves, John W. Tobin, as sheriff of Bexar County, and others, for the purpose of enjoining Tobin as sheriff from placing

Albert Steves in possession of certain premises described in her petition which Tobin as sheriff sold to Albert Steves by virtue of an order of sale on December 1, 1905, and to annul and cancel the judgment of decree upon which the order of sale was issued.

The grounds upon which the relief was sought are that the property was acquired by herself and husband, the deed being made to him, on May 19, 1892; with the intention and for the purpose of making it their homestead; that on June 8, 1892, her husband borrowed $1,000 from Johanne Steves for which he executed to her his promissory note payable one year after date, and at the same time made a deed of trust on the premises to Ernest Steves to secure Johanne in the payment of the note; that such deed of trust was executed by her husband alone without her knowledge or consent, after the property had been designated as their homestead by making such improvements thereon as evidenced their intention and purpose to occupy it as their home. That the judgment under which the property was sold by the sheriff was recovered on said note on January 20, 1898, against her husband, and, as against him, plaintiff and others, decreed a foreclosure of said deed of trust made by her husband to secure its payment, and ordered the sale of the property in controversy to satisfy it; that the property being the homestead of her husband's family, the decree of foreclosure thereon was void, for that she was never cited to answer the suit, never waived citation, accepted service nor appeared and answered in the case, and her purported waiver and acceptance of service, appearing among the papers in the case, being as to her a forgery.

The appellants answered by general demurrer and a general denial and pleaded specially that on June 8, 1892, when the deed of trust was given on the property by Chas. M. Smith, he was unmarried and not entitled to a homestead, and did not occupy the property; that prior to the rendition of the judgment foreclosing said deed of trust plaintiff herein, Rafaela R. Smith, entered her appearance in the suit by a written memorandum which was filed with the papers in the cause on April 22, 1897, and that such written memorandum had remained on file ever since that time, and that she did appear in said cause and had notice of said judgment and was bound thereby. Defendants also pleaded the four years statute of limitation, and also declared on the injunction bond, given by plaintiff in this case and prayed judgment against her and her sureties thereon for the rental value of the property from the time of the issuance of the injunction up to the date of trial.

The case was tried before a jury and the trial resulted in a verdict and judgment for the plaintiff.

There are two questions presented by the assignments of error to which all others are subsidiary. They are:

1. Was the lot in controversy the homestead of Chas. M. Smith at the time he executed the deed of trust to secure payment of the note which he made to Mrs. Steves for the money she loaned him?

2. Was the decree foreclosing the deed of trust by virtue of

which the property was sold by the sheriff, void as against the plaintiff, Rafaela R. Smith?

Our consideration of these questions will embrace the assignments of error and the conclusions of law and fact relating and pertinent thereto. They will be considered in the order stated.

1. One of the questions subsidiary to this one is, Were Chas. M. Smith and Rafaela R. Smith husband and wife when the money was borrowed by the former from Johanne Steves and the deed of trust made by him to secure its payment? For if such relation did not then exist between them the property could not at that time have been their homestead, and there would be an end of the question. It is not claimed by the plaintiff that the rites of matrimony had then been celebrated between them by license in accordance with the statutory requirement. According to her own testimony, this was not done until September 28, 1897, at which time their marriage was celebrated, under a license in which her name appears as R. Ramon, by Father Munoz, a priest, at San Fernando Cathedral, in San Antonio, Texas. But her claim is that she was then his wife by virtue of a common law marriage existing between them. The evidence upon this issue is not stated in the brief of either party, and, as it might be contended by appellants that the statement contained in their brief showing a statutory marriage long subsequent to that time was an implied negation of a prior common law marriage, we have had recourse to the stenographer's record of the testimony upon this issue and found it sufficient to support a verdict upon it in favor of the appellee's contention.

But the contention of appellant is, conceding there was such marriage, that neither Mrs. Steves nor Ernest Steves, the trustee in the deed of trust, had notice of the existence of such relation at the time the money was loaned and the mortgage executed to secure its payment, and that they acted upon a well-founded belief, induced by the statement made them by Chas. M. Smith, that he was at that time unmarried, neither knowing anything to the contrary or having knowledge of any fact which would induce him or her to believe such statement was false or put them upon further inquiry. We believe that this contention is fully sustained by the uncontroverted evidence. What, then, is the legal effect of the establishment of the facts thus contended for by appellants? This question is fraught with perplexities which should be untangled before answering the principal inquiry under investigation.

The relation of husband and wife brought into existence by a common law marriage is precisely the same as that which attaches to a marriage entered into in conformity to the written law. The rights, privileges, duties and obligations of the contracting parties are, under the law, the same in either kind of marriage. A different kind of evidence is required to establish the celebration of one from what is essential to prove the other. This can make no difference in the relation of the parties, which is that of husband and wife under either form. The license to marry and the return thereon by the officer or minister celebrating the rites of matrimony between the parties, nor the record thereof were intended as notice

to the public in the sense that a written instrument is which is required or permitted by the statute to be recorded. These are matters of evidence, primarily intended for the benefit of the parties and those claiming rights growing out of their relation as husband and wife. The record of the license and the return thereon, showing that the marriage has been celebrated, is not constructive notice to a third party dealing with either spouse of his or her relation to the other; nor can either the husband or wife be prejudiced in his or her rights by the absence of such record, which, from its very nature, must always be absent in the case of a common law marriage. Is, then, one who deals with a married man, as in this instance, who lends him money and takes a mortgage on real estate, the record title to which appears to be in him, to secure it, charged as a matter of law with knowledge of his marriage? The contention of appellee is that he is charged with such knowledge and deals with the man at his peril. The cases cited (Watkins v. Markham, 36 S. W. Rep., 145.; Brooks v. Sanger Bros., 105 S. W. Rep., 37), to support this contention are not in point. In both cases the defendants knew that the plaintiffs were husband and wife; and in the first, that the property in question was their homestead, and in the second, the record of title was such as to charge them with knowledge as a matter of law of its homestead character. Here, the question is, was Mrs. Steves, who was ignorant of the fact of Smith's marriage, and believed and acted upon his statement made at the time that he was a single man, charged by the law with knowledge of his marriage? We are familiar with the principle that if one enters into an agreement with a married woman, in ignorance of her coverture, he can not take advantage of such ignorance to defeat the provisions of law incapacitating her from entering into a contract. But we know of no such principle applicable to a man who is *sui juris*. It may be assumed that a contract may be made with him affecting any property he may own, unless the party contracting with him knows, or is in possession of facts charging him with such knowledge, that his status regarding the property is such as to prevent him from entering into a valid agreement affecting it. In this case it was absolutely essential to plaintiff's recovery to show that Charles M. Smith was her husband at the time he gave the deed of trust on the property in controversy. For unless he was her husband the property could not have been their homestead. The defendants Steves were ignorant of the fact of such marriage, and having been informed by him that he was a single man, were not in possession of any fact that would put them upon further inquiry or lead to the discovery of the fact of his marriage. The money was loaned upon the security of the property in good faith under the well-founded belief that he was single, and, consequently, that it was not and could not then be his homestead. What is the legal effect of these facts?

It seems to be a well-settled principle of law in this State, founded on justice and reason, that a purchaser of land for value and in good faith from one who is the owner, or apparent owner, with the apparent right to sell, will be protected from equities or rights of

others in the property of which he had neither actual nor constructive notice. Hickman v. Hoffman, 11 Texas Civ. App., 605, 607; Sanborn v. Schuler, 3 Texas Civ. App., 629, 632; Hensley v. Lewis, 82 Texas, 595; Hurt v. Cooper, 63 Texas, 362; Michael v. Knapp, 4 Texas Civ. App., 464. A claim to homestead rights in the property has been held to be ruled by this principle. Woolfolk v. Ricketts, 48 Texas, 29; Love v. Breedlove, 75 S. W. Rep., 649; Causey v. Handley, 98 S. W. Rep., 431. It is needless to say that the rule just stated is alike applicable to a mortgagee who, under the same facts and circumstances, lends money and takes a mortgage on the property; for such mortgagee stands in the attitude as a purchaser in good faith. It therefore seems to us that the effect of such facts was, as to the deed of trust, to divest the property of its homestead character (if it was in fact the homestead of appellee and her husband) and to constitute a valid lien thereon to secure the money loaned upon faith that the mortgagor was a single man and not entitled to a homestead.

Though the matters so far discussed were treated as subsidiary to the main question, the effect of the conclusion deduced from them may be regarded as determining the case in appellant's favor. We will, however, consider, without regard to such matters, whether the property was, in fact, the homestead of the parties at the time the deed of trust was executed. In discussing this question it will be conceded *pro hac vice* that the parties were husband and wife at the time, and, as such, entitled to dedicate and appropriate the property as their homestead. The undisputed evidence shows that there was no appropriation by actual occupancy at the time; that there never was such an appropriation of it by Charles M. Smith; and that it was never occupied as a home by the plaintiff until September 1, 1905, when she moved into the house on the lot, which was over thirteen years after the deed of trust was made, and some time after her husband had abandoned her. In view of this, it only remains to be seen whether the property had been dedicated or designated as a homestead.

It is for the husband, who is the head of the family, to designate the homestead. The intention nor acts of the wife can give property that status. Such intention and acts as may be essential to the dedication of property as the homestead of the family must, from the very nature of the marital relation, necessarily be those of the husband, or attributable to him. The wife may induce such intention and acts on his part, or concur in the intention and join with him in such acts, yet such inducement or concurrence is not essential to the dedication. However desirous the wife may be for a homestead, or solicitous that a certain piece of property may be dedicated as such, the husband may ignore her wishes and refuse as long as he lives with her to designate or appropriate any property he may own, however suited to the purpose, as the homestead; or he may dedicate any piece of property he may have, wherever situated in the State, to that purpose, however desirous the wife may be for him to designate and appropriate another. There is no law in this State which compels him to have a homestead at all, nor that

gives the wife the right to acquire one without his concurrence and consent. Though he may have ample means to acquire a homestead, or property suitable to be designated as such, he may ensconce his family in hotels or boarding houses, or drag his wife and children month to month from hovel to hovel, the law will not, until he dies, lay its hand upon any of his property and say, "This is the homestead of the wife and children; or this much shall be appropriated and taken by them in lieu of it."

The undisputed facts in this case show that the property in controversy was purchased by Chas. M. Smith from Guadalupe Trevino, appellee's half-brother, on May 19, 1892; that at the time it was purchased there was a dwelling house on the lot, suitable for occupancy, which, if not occupied at the time of the purchase, was occupied within a few months afterwards by Henry Bode, who continued to live in the house for about thirteen years, paying rent therefor during the period to appellee's husband at the rate of $10 per month; that from the date of the purchase until Smith abandoned appellee, which was not earlier than 1904, he lived with his family on different rented premises in San Antonio, though he could, at any time during that period, if he desired, have moved in the house and occupied the premises as a homestead; that it was not until her husband abandoned her that appellee moved on the premises, the reason she gave is as follows: "I moved in my place on the 1st of September, last year (1905), because my husband left me and I didn't have any money to pay rent, and, of course, I had to go to my own home—what I expected to be my own home."

Intention in good faith to occupy the premises is said to be "the prime factor" in securing the benefits of the homestead exemption. Cameron v. Gebhard, 85 Texas, 616. We have seen that such "intention" must be that of the head of the family, who, in this case, was, at the time of the execution of the deed of trust, Chas. M. Smith. It is not necessary that such intention should be verbally expressed, for it may be manifested by acts as well as by words. The testimony as to this intention, as given by plaintiff, may be stated in a narrative form as follows: "I paid $600 of the consideration, which was $2000, for the property out of my separate funds for the sole purpose of procuring a homestead, with the expectation of going and living there with my children. I expected to use it in no other way than to go and live there. I gave the $600 to my husband to be used in paying for the property. I did not move on the property because my husband was on the police force and he always said, 'We will not move this month, but will move next month and we will fix the house and then we will move there, because it is not good enough for us to live there, till we fix it a little bit. We will not move there yet.' In 1892 my husband was a horse buyer and subsequently served on the police force four years, and the reason he did not go to live on the property was because he was always on the go and it was not in proper condition to move into. We fixed the house, papered it inside and put up a new fence and fixed the sidewalk there, and raised the house, painted it and fixed the roof for our benefit to live there, and

planted a few trees in front so that the house would look a little better when we moved there." She also testified that the house was vacant when they bought the place in May, 1892, and for four or five months thereafter, and they commenced to fix it in June, and that all the work was done immediately after they bought the place.

Another witness, Mrs. Balcom, testified that they (Smith and wife) spoke so many times of having it (referring to the property in controversy) as a homestead; that she had often asked Mr. Smith why he never went on his place, and he always gave an excuse one way or the other, and that she never knew why they didn't go on it, but that Mrs. Smith was always inclined to go on it, and always talked about moving on it.

This, we believe, is as favorable a statement of the testimony for the plaintiff on the issue of dedication as the record will justify. And, in this connection, we will say that, in our opinion, statements made by the husband to his wife, at the time he purchased or when he was having improvements made upon the property, declarative of his intention in making the purchase or improvements, are admissible as *res gestae* for the purpose of showing his intention regarding such matters in a case like this where his intention is a legitimate subject of inquiry, and that the wife is competent to testify in her own behalf as to such declarations. Rev. Stats., art. 2301.

While this testimony tends strongly to show that it was the earnest desire of the appellee that the property be dedicated and appropriated as a homestead, we hardly think it sufficient, in view of all the evidence in the case, to show that it was ever intended by her husband that it should be so dedicated. But this was a question for the jury, and the state of the evidence is not such as to authorize us in holding, as a matter of law, that there was an absence of such intention.

But while intention in good faith to occupy premises may be the "prime factor" entering into the dedication of a homestead, its characterization as a "factor" shows that it is only one of the elements contributing to produce the result of impressing upon and giving property a homestead character, demonstrating that "intention alone can not give a homestead right." The intention must either be carried into effect, or acts done by the intender in furtherance of it. In this case the intention of Chas. M. Smith, if it ever existed, to occupy the premises was never carried into effect. For nearly fourteen years after he acquired the property, not for a day during all that time did he or any member of his family occupy it, though there was a dwelling house on it fit for occupancy, at least after the time it was repaired as testified to by his wife. In order that property may be exempted as the homestead, it is required that "the same shall be used for the purposes of a homestead." Making the improvements testified to, was as consistent with the purpose of renting the property as it was with that of preparing it for occupancy as a homestead. And when it is shown that the property was rented to Henry Bode and occupied by him as Smith's tenant for thirteen years after such improvements were made, no other

rational conclusion can be drawn than that they were made for the purpose of renting the property, and not with the intention of preparing it for occupancy as a homestead.

A man, though he may purchase property with the intention of making it his homestead, can not, by placing improvements upon it rendering it suitable for occupancy, without evading the letter as well as the spirit of our exemption laws, rent it to a third party, and for fourteen years afterwards live elsewhere without ever having occupied the property, successfully claim that it was ever his homestead. Nor can the wife under such state of facts be heard to assert such a claim after her husband has abandoned her, without ever having asserted it himself. Where property, not suitable for occupancy, is purchased with the declared intention of making it a homestead, act of preparation may be regarded as "the corroborating witness of the declaration of intention" while the preparation is being made. But when the preparation is complete and the property fit for occupancy, if, instead of occupying it, the property is leased for years to and is occupied by another, the act of preparation can not then be regarded in the light of a witness corroborating the declaration of the owner's intention to make it his homestead, but should be taken as a witness against the truth of such declared intention, and as evidence that the improvement was made with the intention of renting the property to someone else.

We therefore conclude that the undisputed evidence, viewed in the light of the law, shows conclusively that the property in controversy was not the homestead of Chas. M. Smith when the deed of trust given to secure the money loaned him by Johanne Steves was executed, nor at any time thereafter, and that, even if it were shown to be his homestead at that time, such fact could not, under the undisputed evidence—for the reasons before given—defeat appellants' right to a foreclosure of such deed of trust.

2. If, as we have held in disposing of the first question, the lot in controversy never was the homestead of Chas. M. Smith, it is immaterial whether the decree of foreclosure was void as against the appellee for the reasons asserted by her, or not. For in such event, the lot being community property, the decree would affect her community interest as well as his, even though she were not a party to the suit. This would render the consideration of the second question propounded, as well as all others subsidiary to it, unnecessary were it not that we are required by the Legislature to consider and dispose of all assignments of error, whether relating to matters of law or fact.

As has been seen from our statement of the issues in the case, appellee attacks the validity of the judgment upon the ground that the purported waiver of citation and acceptance of service appearing among the papers in the suit was never signed by her, and that she never appeared in the suit, and that she never knew of the deed of trust nor of the decree of foreclosure until after the property was sold under the order of sale.

The burden of establishing these allegations was upon the plaintiff, and, as to the forgery of her signature to the purported accept-

ance of service and her nonappearance, of satisfactorily proving them by a preponderance of the evidence. Randall v. Collins, 58 Texas, 231; Kempner v. Jordan, 7 Texas Civ. App., 275. While she testified that she never signed the acceptance of service, the great preponderance of the testimony shows that she did, or at least ·in some manner authorized the signature of her name to the paper on which such waiver was written. And in our opinion the judgment canceling the decree of foreclosure should be reversed for this reason. Besides, the judgment sought to be enjoined contains the following recitation:

"On this, 20th day of January, 1898, coming on to be heard the above entitled cause in its regular order, came Johanne Steves, the plaintiff, in person, and by Messrs. Shook & VanderHoeven, her attorneys, and likewise came the defendants, Charles M. Smith, Rafaela R. Smith, Domingo Martinez, Jesusa R. Martinez and Ernest Steves, *each in person;* and all parties announcing themselves ready for trial, and waiving a jury, submit all matters in controversy, as well of fact as of law, to the court. And the pleadings being read, the record inspected, the evidence adduced by all the parties and the argument of counsel being heard, considered and fully understood, and the court being duly advised in the premises, finds that all of the material allegations in plaintiff's original petition contained are true, and accordingly finds for the plaintiff for the principal, interest and attorney's fees of the note sued upon, aggregating the total sum of $1,338.32 and all costs, against the defendant, Charles M. Smith, and with a decree of foreclosure of the trust deed lien against all of the defendants, upon and against the premises in plaintiff's original petition described. . . ." It does not directly appear from plaintiff's testimony that this recital of her personal appearance is not true; nor is such recital directly impugned by the testimony of any other witness. If it is true, as it must be presumed in the absence of any direct testimony to the contrary, it is immaterial whether plaintiff's purported acceptance of service was forged or not. Ingle v. Bell, 84 Texas, 463. There is evidence in the record from which the inference may, perhaps, be drawn that the recital as to appellee's personal appearance at the trial is false; but the falsity of a recital in a judgment should not be inferred from circumstances when direct evidence upon the issue can be produced. The truth of the recital of the fact of this plaintiff's appearance in the cause, when it was tried, would not only show that the judgment was valid as against the attack made in the suit, but would furnish conclusive evidence of plaintiff's notice of the rendition of such judgment, as well as conclusive evidence that this action by her to annul it was barred by the four years statute of limitation. We therefore conclude that the evidence is wholly insufficient to establish the invalidity of the judgment, as against the appellee, foreclosing the deed of trust upon the property in controversy.

From our conclusion upon either question considered, it follows that the court erred in not peremptorily instructing the jury to return a verdict in favor of defendants, and in favor of the defendant

Albert Steves, the purchaser under the order of sale, for the premises in controversy, together with the rents thereon accruing from December 27, 1905, to December 20, 1906 (the date of the judgment rendered in this case), against the plaintiff, Rafaela R. Smith, and the sureties on her injunction bond, N. Zimmerman and R. L. Flores. And it appearing from the undisputed evidence that the rental value during that period was $15 per month, the judgment of the District Court is reversed, and judgment is here rendered dissolving the injunction, and in favor of the defendant, Albert Steves, for possession of the property and quieting his title thereto as against plaintiff's homestead claim thereon, and against Rafaela R. Smith and N. Zimmerman and R. L. Flores, as sureties on her injunction bond, for the rental value of the premises at the rate of $15 per month from December 27, 1905, to December 20, 1906, without prejudice to the right of Albert Steves, if any he may have, to sue and recover against the principal and sureties on said bond the rental value of said property from the last named date up to such time as he may be placed in possession of said property. Reversed and rendered for appellants.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

By various assignments three questions were presented in this case for decision, which are: (1) Was the property in controversy the homestead of plaintiff and her husband when the mortgage upon it was given? (2) If it was a homestead at that time, did the appellant, Johanne Steves, when she loaned the money and took the mortgage, have notice of it? (3) Was the appellee, Rafaela Smith, concluded by the judgment against her and her husband foreclosing the mortgage lien?

A decision in favor of the appellants on any one of the questions would have been conclusive of the case. But, notwithstanding this, we were required by the Legislature to decide them all. To meet the requirement, in discussing the assignments involving the second question, we confessed that we were unaware of any principle of law which imposes upon one dealing with a married man knowledge of his marriage, and that we could not perceive any reason why such knowledge should be imputed. We also intimated that the principle which charges one dealing with a woman under the disability of coverture with knowledge of the fact of her incapacity to contract, did not obtain where one deals with a man, for obvious reasons.

This confession was made with beseeming modesty, and we were unaware until we read the motion that there was anything said which would tend to disturb homestead rights. While we are pleased with the elegance of diction in that part of the motion which assails our opinion, we would have been more than pleased—indeed, we would have been delightedly grateful—if counsel had cited us to an authority which would have enabled us to correct our impression of the law if shown to be wrong. But as that part of the opinion was used in the discussion of, and only intended to apply to that

phase of the case involving the second question, as stated above, it will be withdrawn insofar as it may be thought applicable to either of the others and limited simply to the question of notice only in its applicability to appellee's lending the money and taking the mortgage on the property in good faith.

Before one can be charged with notice of the fact that property is a homestead, the *fact* must exist. But when property is in fact a homestead, evidenced by use and occupancy, knowledge of all the facts essential to its existence is imputed to a mortgagee or purchaser thereof. As is said, "Every person dealing with land must take notice of an actual, open and exclusive possession; and where. this, concurring with interest in the possessor, makes it a homestead, the lender stands charged with notice of that fact, it matters not what declaration to the contrary the borrower may make." Texas L. & L. Co. v. Blalock, 76 Texas, 85. See also Whetstone v. Coffey, 48 Texas, 269; Sweet v. Lyon, 88 S. W. Rep., 384; McGaughey v. Am. Nat. Bank, 92 S. W. Rep., 1009; Adams v. Bartell, 102 S. W. Rep., 779.

But it is equally well settled that where claimants are not in actual possession, subjecting the property to homestead use, representations amounting to fraud will estop them from setting up the claim against persons acting on such representations in ignorance of the homestead claim. Thomson Savings Bank v. Gregory, 59 S. W. Rep., 622; Equitable Mortg. Co. v. Norton, 71 Texas, 683; Roane v. Murphy, 96 S. W. Rep., 782; Moerlein v. Scottish Mort. Co., 9 Texas Civ. App., 415; Thomson Sav. Bank v. Gregory, 82 S. W. Rep., 802.

Our original opinion fully discusses all the questions presented, and enunciates the law upon them as we understand it. Nothing radical nor revolutionary was intended, nor is anything tending in that direction perceived. We have no legislative power, and our oath of office forbids its usurpation. Had we departed from our duty and encroached upon the domain of the Legislature, as counsel express the hope some court will rise up and do in the future, then indeed our opinion would have been "revolutionary." That we had no desire to do. Our purpose was simply to decide the case according to the law. Cold and cheerless as the opinion may be to the appellee, it is the law as we understand it; and it is beyond our power to relieve her from the condition in which a worthless husband has left her. The motion is overruled.

*Overruled.*

Writ of error refused.