## CONTINENTAL SOUTHLAND SAVINGS & LOAN ASS'N v. PALMER.

### No. 11897.

Court of Civil Appeals of Texas. Dallas.
March 7, 1936.

Rehearing Denied April 11, 1936.

W. H. Flippen and Dan P. Johnston, both of Dallas, for plaintiff in error.

P. C. Fewell, of Dallas, for defendant in error.

BOND, Justice.

This suit was instituted by Minnie May Palmer against Continental Southland Savings & Loan Association, Donald McGregor, and Ralph Beaton, seeking, by injunction, to prevent the defendants from exercising the power of sale under a deed of trust, claiming that the lien created thereby and owned by Continental Southland Savings & Loan Association was invalid and constituted a cloud upon her homestead. The Continental Southland Savings & Loan Association, which for brevity will be hereinafter referred to as loan association, defended against the injunction on the ground that, at the time of the inception of the liens, the property covered by the deed of trust was not the homestead of the plaintiff; and that it acquired the liens through the acts and conduct of the plaintiff and her husband, J. B. Palmer, since deceased, in such manner as to estop them from claiming the property as their homestead.

The trial was to a jury, and, on findings which we deem are not presently material, judgment was rendered in favor of the plaintiff, canceling the defendants' liens, removing the cloud upon the property in question, decreeing the title and possession of the property in the plaintiff, and perpetually enjoining the defendants from exercising the power of foreclosure and sale under the deed of trust.

Briefly stated, the evidence shows that, prior to November 19, 1923, J. B. Palmer and his wife, Minnie May Palmer, owned and occupied a house and lot in Wiley, Tex., as their actual homestead, and that they continued to own the property, free and clear of, debt, until September, 1926, at which time they placed a mortgage thereon in the sum of $1,000. The Palmers owned also a farm in Denton county, Tex., some real estate in South Texas; and

on September 11, 1923, purchased lot 10, in block 1, of Trinity Heights No. 1, a vacant lot on Seevers street, in the city of Dallas, Tex. In September, 1923, they moved from Wiley, Tex., abandoned their then homestead, and moved to Dallas, Tex., occupying rented houses, until about June 8, 1925, when they moved to the Seevers street property. A house, in the meantime, had been erected on the vacant lot.

The evidence is undisputed that J. B. Palmer purchased the lot on Seevers street with the intention then of making it the homestead of himself and family; improved it by the erection of a house thereon; and on June 28, 1926, was actually occupying and using the premises for the purposes of a home. The improvements on the lot were begun in December, 1924, by the placing of a substantial amount of hollow tile and lumber thereon, and in January, 1925, the actual construction of the house was started, and it was completed during the month of June, following.

In January, 1925, after the construction of the house had actually begun, J. B. Palmer made an application to Republic Insurance Company in the form of an affidavit, wherein he stated that the Seevers street property was not his homestead, and that his homestead was at Wiley, Tex. On the strength of the application, on February 19, 1925, the Republic Insurance Company loaned to J. B. Palmer $3,200, taking a note signed by him and his wife, Minnie May Palmer, as evidencing the loan; and also acquired a deed of trust as security therefor upon the property in question. The deed of trust was prepared by one R. L. Stennis, signed by both J. B. Palmer and Minnie May Palmer, and appears on its face to have been acknowledged in statutory form by Mr. and Mrs. Palmer before an authorized notary public. However, Mrs. Palmer, in pleadings and proof, contends that she was coerced in signing the instrument by her husband, and that she did not appear before the notary public to acknowledge the same as her act and deed. The jury found such to be true; thus this court must hold the deed of trust to be the act and deed of the husband alone. The deed of trust, in a typewritten provision, recites: "It is understood, agreed and declared by grantors that the foregoing property constitutes no part of our homestead; that they have a homestead consisting of a lot and improvements thereon situated in the Town of Wiley, in Collin County, Texas, and said lot and improvements in said Town of Wiley are claimed, used and hereby designated as their homestead." The testimony is that the Republic Insurance Company made the loan in reliance of the declarations stated.

On May 8, 1925, while the house on Seevers street was in the course of construction, J. B. Palmer and wife made application to and was granted a loan of $1,500 by the First State Bank of Wiley, Tex.; and thereafter they executed a note and deed of trust on the Seevers street property to secure the loan to R. L. Stennis, trustee, for the benefit of said bank. The deed of trust was prepared by the trustee, signed by J. B. Palmer and Minnie May Palmer, and appears to have been acknowledged by them in statutory form before an authorized notary public. However, Mrs. Palmer contends that she was also coerced in signing this instrument, as she was in the making of the deed of trust to the Republic Insurance Company, by her husband, and that she did not appear before the notary public, as stated herein. The jury also found in favor of her version of this transaction; thus the finding is binding on this court and must be held to be the act of the husband alone. The testimony is to the effect that the bank officials made the loan in reliance of the declarations that the Wiley property was the Palmer homestead, and that the Dallas property was not their homestead.

On March 19, 1926, J. B. Palmer and Minnie May Palmer executed a mechanic's lien contract on the lot and improvements on Seevers street in favor of the Uvalde Paving Company to secure the sum of $300, for pavement on the street in front of and adjacent to the Seevers street property. There is no contention made in pleadings or proof as to the validity of this lien, and the amount thereof has been tendered in court, in payment of whatever amount there may be due thereon.

On June 28, 1926, J. B. Palmer and wife, Minnie May Palmer, executed a written application to the Continental Southland Savings & Loan Association, the defendant, wherein they made application for a loan in the sum of $5,000, to take up and extend the three above-mentioned transactions; whereupon, the loan association's officials inquired of the applicants as to the status of the Seevers street property as of February 19, 1925, and May 8, 1925, respectively; and, in pursuance to such inquiry, J. B. Palmer and Minnie May Palm-

er executed and delivered to the association an affidavit, wherein they stated that on each of the respective dates mentioned above, they did not live upon the Seevers street property, and did not use the same or any part thereof as their residence or business homestead; but that, on said dates, they lived upon property owned by them in the town of Wiley, Tex., which property was then being used and occupied as their homestead; and in which affidavit it was further stated that "the foregoing representations are made to Continental Savings & Building Association, a corporation of Dallas County, Texas, for the purpose of inducing said Association to act thereon in making affiants a loan in the sum of $5000.00, secured by a deed of trust dated June 28th, 1926, conveying to Ralph A. Beaton, Trustee, lot 10, in Block 1, of Trinity Heights Addition No. 1 to the City of Dallas, Texas." (Seevers street property.)

In reliance upon the facts set forth in the above affidavit and the validity of the existing liens above mentioned, the evidence is that the loan association purchased and obtained transfers from the owner and holder of each of said lien indebtedness in the total sum of $5,000, and caused to be executed by the Palmers a deed of trust to secure the amount on the property described therein, to Ralph A. Beaton, trustee, for the benefit of the defendant loan association. The deed of trust was signed by J. B. Palmer and Minnie May Palmer, and appears to have been acknowledged by them in statutory form by an authorized notary public. Again, Mrs. Palmer challenged, in pleadings and proof, that the instrument was not her act and deed, in that she was not mentally capable to execute and acknowledge the same, and at the time did not understand its full import. The jury found, as in the other transactions, in favor of this issue; thus the court must hold, for the purpose of this opinion, as respecting the relation of Mrs. Palmer to the transaction, that the deed of trust was the act of the husband alone.

The related facts, in brief, disclose that the plaintiff and her deceased husband, J. B. Palmer, after purchasing the Seevers street property, a vacant lot, placed the original loans thereon prior to the completion of the house, thus the premises never assumed the status of a homestead by occupancy prior to the inception of the two first above-described original loans; that the plaintiff and her deceased husband, J. B. Palmer, owned their former homestead at Wiley, Tex., free and clear of debts; and that they owned two or more other pieces of property which could have been designated by the husband as a homestead. At the time of the loans, the Palmers were occupying rented premises in the city of Dallas, Tex.; thus their homestead rights depended entirely upon the husband's intentions at the respective dates of the loans, with reference to which of the several places constituted the homestead to be exempted under the provisions of our Constitution.

The intentions of the husband could only be definitely known to and disclosed by himself, and persons dealing with him would naturally rely and act upon his statement as to the property not being impressed with a homestead to estop him from afterwards disputing the truth of the representations made. The principal question to be decided in this case is whether or not J. B. Palmer, at the inception of the lien indebtedness, as the head of the family, had a right, as a matter of law, to designate which of the community properties constituted the family homestead, and whether J. B. Palmer could incumber the premises not so designated with valid liens without the concurrence of his wife.

As the head of the family, the husband is accorded by law the power to select the home without the wife's concurrence and change the designation at will, without the wife's consent, so long as the property so designated has not been impressed with homestead exemption by occupancy. When the designated property has once become occupied as a home, it may be said that the husband cannot designate another, or otherwise incumber the property without the consent of the wife, in the manner provided by law; but, when the property does not assume the character of a homestead by occupancy as in this case, the acts and deeds of the husband relative thereto are valid, thus binding on the wife.

The wife's homestead rights, which necessitate her to join the husband in deeds of trust, arise by virtue of the use and occupancy of the property for homestead purposes in a manner as to divest the husband of the right to sell or incumber it without the wife's joining therein. A vacant lot on which is being constructed a house does not assume the character of a homestead as to deprive the hus-

band of the right to designate another piece of common property suitable for a home, or incumber the premises without the concurrence of the wife, or even over her protest. Under this view, the provisions of the affidavits and deeds of trust, in which J. B. Palmer designated the homestead at Wiley, Tex., amount to an election by the head of the household; nothing having been previously done by occupancy to impress definitely upon the Seevers street property exclusively the homestead character.

In the case of Skiles v. Shropshire, 124 Tex. 462, 77 S.W.(2d) 872, 873, in an opinion by Judge Harvey of the Commission of Appeals, adopted by the Supreme Court, announces the rule applicable here. The court say: "As a rule, the law regards the husband as the head of the family, and accords him the authority to select the home for the family. Schulz v. L. E. Whitman & Co., 119 Tex. 211, 27 S.W.(2d) 1093. It necessarily follows, then, that, while the place selected is being prepared for use as a home, the homestead character of the place depends on his intention alone. The concurring intention of his wife is not required, and has no force to sustain the homestead character of the place. Steves v. Smith, 49 Tex.Civ.App. 126, 107 S.W. 141 (writ refused). Whatever homestead claim she could be said to have, in such a case, would be founded on the intention of her husband to put the place to use as the family home. If he were to abandon such intention, or become estopped by his acts from asserting same, the indispensable support for her homestead claim, as well as his, would be gone. His actions in the last-mentioned respect could not operate as a fraud on her, for the reason that the place would not have become a homestead in fact, by use for the purposes of a home as the Constitution (article 16, § 51) prescribes, and she would have no independent rights to be affected." So, in the instant case, while the place in the city of Dallas was being prepared for use as a home, the husband, J. B. Palmer, had the right to change his intentions of making it the home for himself and family, and designate the formerly abandoned home at Wiley as their home, and had the wife objected to such designation, or the husband had fraudulently acted in the premises, which is not contended, such would avail the wife nothing, and his acts and deeds could not operate as a fraud on his wife's homestead rights, as the place had not, in fact, become a homestead by use in which the wife had an independent right. Accordingly, protection is accorded to an innocent transferee of notes which purport to have been executed for an excepted debt. This is also true in the case of lien notes which have been executed pursuant to a simulated transaction, or a pretended sale and conveyance of a homestead for the purpose of securing a loan and creating a lien upon the property.

From what has been said, the conclusion follows that the trial court erred in not sustaining the appellant's motion for an instructed verdict and refusing appellee's bill for injunction, and rendering judgment in her favor; therefore, the judgment of the lower court is reversed and, as the case has been fully developed, judgment is here rendered in favor of the appellant, dissolving the injunction.

Reversed and rendered.