## In re HAWTHORNE.
### No. 1914.

District Court, N. D. Texas, Abilene Division.

May 27, 1942.

L. B. Lewis, of Baird, Tex., for bankrupt.

Scarborough, Yates & Scarborough, of Abilene, Tex., for creditor S. W. Hughes.

DAVIDSON, District Judge.

This matter is brought before the Court for a review of a proceeding had before the Referee in Bankruptcy at the Abilene Division hereof. In this proceeding the bankrupt, Cora Anderson Hawthorne, asked for an exemption of Lots 1 and 2, in Block 30, of Cross Plains, Callahan County, Texas, be set aside to her as a homestead under the laws and Constitution of the State of Texas, and Section 6 of the National Bankruptcy Act, 11 U.S.C.A. § 24. The creditor, S. W. Hughes, takes the position that his duly abstracted and recorded judgment lien is a prior encumbrance, superior to her asserted homestead rights, and that the property should be sold and the proceeds applied in satisfaction of his lien debt.

From the facts surrounding the case, it appears the bankrupt was originally married to Tom Anderson and two children were born to that marriage, and the home had been built with the separate property of the wife and occupied for a number of years, since about 1920, by the parents and the minor children; that afterwards the husband, Anderson, moved to San Angelo, Texas, and secured a divorce from the bankrupt. She remained upon the property with her two children continuously, occupying the same as a head of the family and claiming it as their home. During the meantime, the creditor Hughes secured a judgment against Anderson and his wife and caused the same to be filed in the judg-ment records of Callahan County, Texas, as authorized by law.

Thereafter, on April 9, 1936, the bankrupt married a man by the name of Hawthorne, who was residing in another county on rented premises, cultivating and raising a crop as a tenant farmer. A few months later they separated, he having abandoned his wife. She returned to her home in Cross Plains, Texas.

The creditor Hughes takes the position that when the bankrupt married and went to the rented premises of her second husband, Hawthorne, to reside with him temporarily while he cultivated and gathered the crop he was raising, such action constituted an abandonment of her homestead in Cross Plains, Texas, with the intention not to again return thereto and occupy the same as a home, and hence his lien attached, and that any returning thereto by her and her children did not revive or restore her homestead rights.

The referee in his finding No. IX finds: "At and about the time they were married and subsequent thereto, it was agreed and understood and talked over between Mr. and Mrs. Hawthorne that they would make and continue to use her separate property in Cross Plains, Callahan County, Texas, as their home, and carried out this intent and agreement in effect (S.F. p. 29). She never removed her furniture, household equipment and fixtures from said premises, but has maintained the same for use and occupancy therein since it was first built and erected about 1920; that Hawthorne never at any time went to, or lived in said premises with his wife as a homestead, and he did not appear and testify in this case, and the record is absolutely silent as to any intentions of the homestead rights of Mr. Hawthorne, except from the testimony given by Mrs. Hawthorne as above stated to the effect that they had agreed and it was their intention and his intention at all times during their marriage relation to continue the Cross Plains property as their home. (S. F. pp. 12, 16, 19)."

The evidence to support the referee's findings and other circumstances found in the record pertaining to the conduct of the parties would indicate that the parties did intend to make and continue such property as their home, and that they did not abandon it as a home, nor did they acquire another home during their marriage, the same presenting a question of fact supported by the evidence herein and ought not

to be disturbed by this court unless clearly erroneous.

■ Section 6 of the National Bankruptcy Act relating to exemptions of bankrupts in effect provides: "The exemptions allowed are those prescribed at the time of the filing of the petition by the laws of the United States or of the State wherein the bankrupt had his domicile. * * *"

It thereby becomes a question of local law as to what exemptions should be permitted a bankrupt upon being adjudicated, and the construction given to the laws of the State of Texas by the courts therein are controlling in this issue.

Art. 16, Sec. 50, Constitution of the State of Texas, Vernon's Ann.St., provides: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, * * * nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

Section 51 provides: "The homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

Section 52: "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, * * * but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead," etc.

Art. 3832, R.S. of Texas, Vernon's Ann. Civ.St. art. 3832, relating to exemptions to the family, provides: "The following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: 1. The homestead of the family. 2. All household and kitchen furniture."

Art. 3833 provides substantially the same as Art. 16, subd. 51 of the Constitution.

The homestead in this case is two lots in the village of Cross Plains, Texas, upon which, with her separate funds, the bankrupt and her first husband erected a house during the year 1920 at a cost to her of about $14,000. After she and her husband separated and he secured a divorce in San Antonio, Texas, she continued to reside upon said premises with her minor children, temporarily renting a part of it and temporarily leaving it at intervals to go to places where she secured work for herself and children, but at all times leaving her furniture and a part of her household effects in said premises, and continuing to claim and hold the same as her permanent home.

When bankrupt married the second time in Lovington, New Mexico, her husband Hawthorne was a tenant farmer in West Texas, renting land and making a crop on the shares, and she went to said rented premises under an agreement with him, and with the fixed intention on his and her part of residing there temporarily, to cultivate and harvest said crop, and afterwards to return to her home in Cross Plains, Texas, and continue it as their permanent home. This intention and agreement on the part of the husband and the wife is amply shown by the Referee's findings of fact herein, and by the evidence supporting the same, and never at any time did she abandon or give up her intention of returning to said property as her fixed and permanent home in Cross Plains, Texas.

■ It will be borne in mind that this record is absolutely silent as to the intention of the husband Hawthorne; that he did not appear and testify in the case, and the only evidence throwing any light on his intention was from the wife, the bankrupt herein, who clearly and unequivocally testified that it was his intention and his agreement with her at the time they married to later return to the Cross Plains home and make it their homestead. Such being the case, the question of acquiring, designating and furnishing a home by the husband to the wife and

his exercising his right to so designate one, is not presented by this record, but the question of the abandoning with the intention of not returning to a home previously acquired is presented by this record. Had the husband testified he owned a home and had furnished the wife a home and she had abandoned her previously acquired home to reside with him, then the question of selection and designation of a home would be presented and an issue of fact could thereby be made upon this question, but by his absence and his failure to testify, we must accept the testimony of the wife as true and conclusive.

 Judge Speer, an eminent writer on Marital Rights in the State of Texas, says: "Abandonment, like any other question of fact, is one to be shown by the surrounding circumstances evidencing the intention of the family with reference to the future occupancy of the property for the purpose of a home. It is largely a question of intention. * * * The acquisition and occupancy of a new home are of course an abandonment of the old home. * * * A temporary renting of a homestead will not change its character so long as no other one has been acquired. This renting may be for any length of time so long as it is temporary in its character and not permanent. Abandonment, like dedication, is usually the act of the husband, but not always so. If he has abandoned the wife and she is acting as head of the family, her act alone is sufficient to evidence an abandonment. (Speer on Marital Rights, sec. 489, p. 601; 22 Tex.Jur. Secs. 53 and 55). And in the absence of the husband's testimony, the wife's testimony is conclusive." Ritz v. First National Bank, Tex.Civ.App., 234 S.W. 425; Good v. Good, Tex.Civ.App., 293 S.W. 621.

In the case of Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35, Judge Cureton, speaking for the Supreme Court, announces the rule: That the homestead laws of the State of Texas are to be liberally construed to effectuate their intents and purposes; that where a divorce is granted and the minor children continue to live with one of their parents, that parent constitutes the head of the family and is entitled to the privileges and rights granted by the Constitution and laws of the State of Texas; and that the divorce does not destroy the homestead rights of the family where minor children remain, and so long as he or she

continue to occupy and use the premises. That in view of our constitutional and statutory provisions concerning the homestead rights, the court has concluded that in this State the homestead is to be regarded as an estate as well as a use created not only for the protection of the family as a home, but for the units of the family, including those who survive, and embracing the head of the family at the time of its dissolution, whether it be brought about by death or dispersal.

From the record in this case it will be seen that the wife never consented to abandon the property as a home; that she and her husband did not acquire another home and he did not, in good faith, exercise his legal right as a husband to acquire and designate a home. In fact, all the evidence in this case shows he intended and agreed with the wife to occupy her separate property as his home.

The order of the referee will be affirmed.