**FIRST STATE BANK OF HUBBARD et al.**
**v. ZEANON.**
**No. 2500.**

Court of Civil Appeals of Texas.
Tenth District.
March 11, 1943.

Rehearing Denied April 1, 1943.

Richard & A. P. Mays, of Corsicana, for appellant.

J. S. Callicutt, of Corsicana, and Fitzpatrick & Dunnam, of Waco, for appellee.

RICE, Chief Justice.

This cause was brought by the First State Bank of Hubbard against E. O. Zeanon for debt and for foreclosure of chattel mortgage liens on personalty and also mortgage liens on real estate.

The jury, in answer to special issues submitted, found: (1) That two deeds of trust, each dated February 10, 1938, and a deed dated May 3, 1939, were executed by defendant Zeanon and delivered to plaintiff Bank for the purpose of securing his then existing indebtedness to said Bank and as security for future advances; (2) that on February 10, 1938, and May 3, 1939, the dates of the above mentioned mortgages, defendant was using and occupying, for the purpose of a home, the land described in said mortgages; (3) that on July 27, 1937, defendant and his wife were then living separate and apart from each other as husband and wife; (4) that at the time of the execution by defendant of the two deeds of trust and the deed conceded to be a mortgage, the defendant and his wife were not reconciled and living together as husband and wife; (5) that when plaintiff Bank accepted the two deeds of trust and the deed above mentioned from the defendant, its officer relied on instruments in evidence dated July 27, 1937, as divesting defendant Zeanon and his wife of all homestead rights in the property in controversy; and (6) that the officers of plaintiff Bank would not have accepted the two deeds of trust and the deed had they not relied on the instruments bearing date July 27, 1937.

Judgment was thereupon entered by the court that plaintiff Bank recover of defendant Zeanon its debt, together with foreclosure of its chattel mortgage liens on personal property; that the land in controversy constituted the homestead of defendant Zeanon and his wife; and that the two deeds of trust and the deed conceded to be a mortgage were each void. From this judgment plaintiff Bank has appealed.

As we view the record the material question on this appeal is whether or not the trial court, based on the findings of the jury and the undisputed evidence, was authorized in rendering judgment that the land in controversy constituted the homestead of defendant and therefore the asserted liens of plaintiff were void.

The real estate involved consisted of two tracts of land, one containing 135 acres, the other 52.24 acres, making a total of 187.24 acres. It is not contended that the indebtedness due the Bank, or any part thereof, was for the purchase money of the land in controversy or for the erection of improvements thereon.

E. O. Zeanon acquired title to the land in controversy by deed dated January 28, 1934, reciting a consideration of five dollars and many kindnesses bestowed on grantor by grantee, a life estate being therein expressly retained by grantor. The deed further recited that it was one of gift, and that the land therein described was conveyed to grantor as his separate property. The life tenant died in May, 1935.

E. O. Zeanon and Mary L. Zeanon were married in 1902, and were never divorced. Both were living at the date of this trial. They had no children living at the date Zeanon acquired title to the land in controversy and none were thereafter born. It is undisputed that Zeanon has lived on the land in controversy continuously from May, 1935, to the date of the trial of this cause, cultivating and using it for those purposes to which it was adapted. Zeanon testified that he was a farmer and had been for many years; that from the time he acquired title to the land in controversy continuously to the date of trial he had lived on, used and claimed the same as his home. He further testified that his wife moved on the land when he did and lived there with him until 1938, when, because of her illness and that she might be more convenient to the doctor, she was moved to rented premises in the town of Dawson, where she remained and was at the time of the trial. The record further reveals that during the trial of the cause Mrs. Zeanon was brought into court on a hospital bed that she might testify. The effect of her testimony was that she lived with her husband on the land in controversy from May 10,

1935, until March, 1938, when because of her health and to be convenient to the doctor she moved to the town of Dawson and occupied rented premises; that at all times material to this appeal she claimed the land as the homestead of herself and husband; that it was her intention to return to the land in controversy as soon as her health permitted; and that her husband was supporting and taking care of her.

Plaintiff Bank introduced evidence from which the jury could find, as it did, that on July 27, 1937, the date on which they executed the partition agreement hereinafter referred to, E. O. Zeanon and his wife were living separate and apart from each other as husband and wife; and that they were not reconciled and living together as husband and wife when the two deeds of trust and the deed were executed by Zeanon.

On May 23, 1935, E. O. Zeanon and Mary L. Zeanon signed, swore to and acknowledged an instrument setting apart and designating as their homestead the tracts of land in controversy; stating therein that a tract of 53.69 acres of land that day conveyed in trust to the First National Bank of Dawson as security for a debt they then owed said Bank was no part of their homestead. This homestead designation was duly recorded on July 13, 1935.

On July 27, 1937, E. O. Zeanon and Mary L. Zeanon, as his wife, executed and acknowledged an instrument in writing which recited that E. O. Zeanon and Mary L. Zeanon were husband and wife; that they desired to make an equitable partition of all their property, both separate and community; and that the schedules of real and personal property therein set forth was a complete list of all property, real and personal, community or separate, owned by them. They thereby agreed that such property should be divided so that Mary L. Zeanon would take as her separate property a life estate in 45 acres of land therein described, with remainder over on her death to her husband; that during her lifetime she should receive one-fourth of the rents and revenues from said 45 acre tract of land, but that E. O. Zeanon should have the power to control, handle and manage the same for the use and benefit of Mary L. Zeanon. Said instrument further provided that Mary L. Zeanon was to be conveyed, as her separate property, two lots in the city of Waco, McLennan County, Texas, as well as all the household and kitchen furniture, beds, bedding, etc., belonging to the community estate of the parties; and further provided that E. O. Zeanon agreed to support his said wife "in a reasonable way and in the manner he has heretofore supported her as long as she remains his wife;" and that he would pay all the community debts owing by him and his wife.

The agreement provided that the remainder of the real and personal property in said agreement described was to be conveyed to E. O. Zeanon as his separate property, and that all future acquisitions of property should be and remain the separate property of the party acquiring same.

The instrument further provided that the parties thereto had conveyed the property described in the contract to a trustee, in order that the partition and division might be carried out, and they did, on said date, execute such a conveyance to a trustee. On the same day the trustee executed deeds conveying to Mary L. Zeanon and E. O. Zeanon the property to which they were each entitled under the terms of said contract; and in each of said deeds the aforesaid partition agreement was referred to and made a part thereof by reference. Each of said instruments was filed for record July 28, 1937, and each was duly recorded shortly thereafter.

There is no statement in any of said instruments that E. O. Zeanon and Mary L. Zeanon were then, or had been, separated, or that a separation or divorce was within the contemplation of the parties.

It is the contention of appellant that in view of the fact that the jury found that Zeanon and his wife were living separate and apart from each other as husband and wife when they executed on July 27, 1937, the partition agreement hereinabove referred to, and since the jury also found that when Zeanon thereafter executed to plaintiff Bank the two deeds of trust and the deed conceded to be a mortgage, he and his wife were not then reconciled and living together as husband and wife, the mortgages in controversy were therefore valid, enforceable liens on the land in controversy as security for defendant's debt to plaintiff, because: (1) the execution of said partition agreement on July 27, 1937, by Zeanon and his wife, while they were not living together as husband and wife, had the effect of destroying any homestead rights in said land which Mary L. Zeanon or defendant E. O. Zeanon might have had

prior to the execution thereof; (2) E. O. Zeanon was not thereafter the head of a family, nor a constituent member of one; and (3) the fact that defendant continued to live on said land after executing the partition agreement could not be given the legal effect of creating a new homestead right in himself.

With this contention we cannot agree. Zeanon, being a married man and the head of a family, had the unquestioned right to select the homestead. That he did select the land in question as a homestead, and did thereafter dedicate the same as his homestead by living thereon and using the same for the purposes of a home, is without dispute. The homestead right may attach although the wife may never move upon the property; it becomes the homestead from the time of its dedication as such by the head of the family. The rule is that the homestead estate exists when the husband resides on the property, even though the wife absents herself therefrom, so long as the husband recognizes and discharges his moral and legal obligations to support her. Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.2d 1093. That Zeanon did recognize his moral and legal obligations to support his wife is evidenced not only by his testimony and that of his wife, but by the express terms of the partition agreement which appellant invokes to destroy the homestead status of the property. In our opinion the instruments executed by E. O. Zeanon and Mary L. Zeanon in effecting a partition of their property did not, under the record before us, have the legal effect of conveying to E. O. Zeanon the homestead rights of Mary L. Zeanon in the property in controversy; nor did E. O. Zeanon, because thereof, cease to be the head of a family. We are of the further opinion that the trial judge, basing his action on the findings of the jury and the undisputed facts in evidence, correctly rendered judgment that the land in controversy was the homestead of E. O. Zeanon and his wife on the dates that the Bank's asserted liens were executed and that each was therefore void.

Appellant further contends that the undisputed evidence and the answers of the jury to special issues submitted conclusively establish that plaintiff Bank loaned its money to defendant in good faith and that defendant was estopped to assert that the land in controversy was his homestead on the dates material to this appeal.

As stated above, the jury found that the officers of the Bank, in accepting the liens in question, relied on the partition agreement between Zeanon and his wife, evidenced by the instruments dated July 27, 1937, as divesting Zeanon and his wife of all homestead rights in the property in controversy, and would not have accepted such liens had they not relied on such instrument. The evidence of defendant as to what he said to the officials of plaintiff Bank for the purpose of inducing them to accept the liens in question, while somewhat obscure, can be fairly interpreted to mean that he represented to said officials that the land in controversy was his separate property; that he and his wife had executed a separation agreement; and that said land was not his homestead. There is no testimony that Mrs. Zeanon ever signed any instrument or made any statement which was calculated to induce the Bank to accept the liens on the land in controversy, unless it be the partition agreement which she and her husband executed July 27, 1937. The officials of the Bank assert (and the jury so found) that they did rely on said partition agreement. However, there is no statement in any of the instruments executed by Mrs. Zeanon that the property therein described, or any part thereof, had not been or would cease to be her homestead; nor do said instruments state that Mary L. Zeanon and her husband had been, were then, or expected to be, separated and had agreed to live separate and apart from each other, or that either of them contemplated a divorce. In other words, there is no testimony that Mrs. Zeanon did or said anything for the purpose of inducing, or which was calculated to induce, the Bank to accept the land in controversy as security for a loan to her husband. Because it is unusual for a husband and wife, while living together in domestic felicity, to enter into an agreement, the effect of which is to partition between them their separate and community property and which attempts to constitute the future acquisitions of the parties, the separate property of the one making the acquisitions, the inference could be drawn therefrom that the husband and wife contemplated living separate and apart from each other. But such inference could not be held to be such an affirmative act on the part of the wife as, standing alone, would estop her from asserting her homestead rights in the realty so partitioned.

The occupation and use by Zeanon and his wife of the land in controversy as a home, and Zeanon's continued occupancy thereof as a home after his wife moved into the rented premises in the city of Dawson, operated as notice to plaintiff Bank of the homestead character of the land in controversy, and its officials were therefore charged with knowledge not only that the husband was without power to bind his wife in respect to the property, but that any lien attempted to be impressed thereon to secure the indebtedness due the Bank would be void, whether executed by Zeanon alone or joined by his wife. Under such circumstances, the officials of the Bank were not warranted in relying on their interpretation of the legal effect of the partition agreement or on Zeanon's statements as to his wife's rights in respect to the land here involved; and Zeanon was not estopped from asserting the homestead rights of himself and wife in denial of the validity of the liens asserted by the Bank. Martin v. Astin, Tex.Com. App., 295 S.W. 584.

Each of the remaining points raised by appellant in its brief have been carefully considered by us. Being of the opinion that none of them present reversible error, each is hereby overruled.

The judgment of the trial court is accordingly affirmed.