**BURK ROYALTY COMPANY et al.,
Petitioners,**

v.

**Billie Rae RILEY et al., Respondents.**

No. B–2681.

Supreme Court of Texas.

Jan. 19, 1972.

Rehearing Denied Feb. 16, 1972.

Sanders, Masters & Watson, H. W. Sanders, Wichita Falls, McMahon, Smart, Sprain, Wilson & Camp, Stephen H. Suttle, Abilene, for petitioner, Burk Royalty Co.

Wagstaff, Alvis, Alvis & Leonard, Robert H. Alvis, Abilene, for petitioner, Citizens National Bank in Abilene.

Rutledge & Rutledge, R. M. Rutledge, Ben Niedecken, City Atty., Edward R. Paynter, Dist. Atty., Robert E. Ford, Abilene, for respondents.

REAVLEY, Justice.

■ Disposition of this case turns upon the status of a homestead exemption for an interest in urban property owned by a woman who remained on the property with her minor children after divorce but who then remarried and moved to live with her new husband. The trial court found against the claimed homestead exemption and rendered judgment in favor of lien claimants in the order of their priorities. The court of civil appeals remanded the cause for the reason that the finding that the woman had abandoned her homestead was against the great weight and preponderance of the evidence. 464 S.W.2d 426. We hold that after the new family was created by her remarriage, there was no homestead apart from that new family, and in the absence of evidence that this property was the homestead of the new family, the claim of exemption fails.

George D. Harris and Billie Rae Harris made the contested property, at 917 Leggett Drive in the City of Abilene, their home and homestead in 1952. Burk Royalty Company obtained a judgment against Harris and filed the abstract for record in 1959. George and Billie Rae Harris were divorced on June 7, 1963. The divorce decree awarded to her custody of the minor daughter and one-half interest in the Leggett Drive home. She was also awarded the use and occupancy of the home so long as she did not remarry. After re-

maining with her children in that home for a few weeks, she married James A. Riley on July 16, 1963. She has not occupied the Leggett Drive property since the marriage to Riley, and he has never occupied it. In the ensuing seven years prior to the trial, the Riley family consisting of James and Billie Rae and her daughter, have lived where his Air Force duty and subsequent jobs have taken him, from Louisiana to Greece and finally to San Antonio as of the date of trial.

When Billie Rae Riley vacated the property, her former husband, George Harris, as owner of the other one-half interest, took control. He has at all times since kept it in repair, obtained tenants, and taken the rent.

Harris instituted this suit against Burk Royalty Company to remove cloud of a judgment lien from the Leggett Drive property. It was the desire of Mr. Harris and Mrs. Riley to sell the property, and prior efforts to do so had been unsuccessful because of the recorded liens. Harris contended by his pleadings that his interest was protected by homestead exemption. He impleaded his former wife, Billie Rae Riley, and her present husband. The Citizens National Bank in Abilene intervened and sought foreclosure of a mechanic's lien and deed of trust against the property. Local taxing units were also made parties to the suit, as they sought foreclosure of tax liens. The trial court rendered judgment for the lien claimants. Only Billie Rae Riley and George Harris appealed, and their complaint was limited to the foreclosure of liens in favor of Burk Royalty and Citizens National Bank. The court of civil appeals held against the appeal of Harris but ordered a new trial for Billie Rae Riley.

Harris has accepted the judgment below and is not before us. James Riley has made no contention as to his homestead rights by pleading or testimony, nor has he appealed from the trial court's judgment. Only Billie Rae Riley is here, claiming that her interest in the property is exempt from

foreclosure because her former homestead protection continued to this date. Her only testimony as to intention after her remarriage was to say that she and Riley would have returned to this property if she had known that the divorce decree did not forbid them from doing so. She pointed to a paragraph in a letter written by the trial judge during the pendency of the Harris divorce where the judge said that her right of occupancy terminated upon remarriage. He wrote: "If she re-marries, it would be sold and the money divided."

The court of civil appeals decided the case on the assumption that the lien claimants were required to prove that Billie Rae Riley voluntarily and totally abandoned the property with the intention of not returning, and the holding was based upon Rancho Oil Co. v. Powell, 142 Tex. 63, 175 S.W.2d 960 (1943). There is a difference in this respect between the homestead of a widow and the homestead of a wife who divorces and remarries. Rancho Oil Co. v. Powell was determined by Section 52 of Article 16 of the Texas Constitution, Vernon's Ann.St. which protects the widow's homestead rights so long as she uses or occupies the land. Section 52 makes no provision for the case of divorce. Bahn v. Starcke, 89 Tex. 203, 34 S.W. 103 (1896). The case at hand is controlled by Sections 50 and 51 of Article 16 which provide that the "homestead of a family shall be . . . protected from forced sale, for the payment of all debts . . ."

■ The homestead of a family consisting only of husband and wife is terminated by divorce—irrespective of intention or occupancy. Since there is no family thereafter, there can be no homestead exemption under Texas law. Tanton v. State National Bank of El Paso, 125 Tex. 16, 79 S.W.2d 833 (1935). However, the exemption does protect a constituent unit of the family which remains in the home after the divorce. Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35 (1929). Thus Billie Rae Harris and her children were entitled to exemption from forced sale of the homestead on Leggett Drive as of July 1, 1963. Even if that family had vacated the premises for a time, and if the question of the retention of their homestead had been litigated, Billie Rae Harris would have enjoyed the presumption that the homestead continued and a lien holder would face the burden of proving her intent as head of the family to abandon it.

■ It is presumed that a homestead continues only if the existence of the homestead is first proved, for the initial burden is upon the person who claims the exemption. Campbell v. First Nat. Bank in Lubbock, 88 S.W.2d 1084 (Tex.Civ.App.1935, writ ref'd). At this initial threshold of her case, Billie Rae Riley fails. She cannot prove a homestead for the Riley family by showing the prior existence of a homestead of the Harris family.

■ The Constitution provides, and the decisions have emphasized, the protection of the *family* as the purpose of the exemption. Linares v. De Linares, 93 Tex. 84, 53 S.W. 579 (1899); Bahn v. Starcke, 89 Tex. 203, 34 S.W. 103 (1896); Whitehead v. Nickelson, 48 Tex. 517 (1878); Davis v. Cuthbertson, 45 S.W. 426 (Tex.Civ.App. 1898, no writ). Where husband and wife are living together, it is the husband who, as head of that family, selects its homestead. Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.2d 1093 (1930); First State Bank of Hubbard v. Zeanon, 169 S.W.2d 735 (Tex.Civ.App.1943, writ ref'd); Steves v. Smith, 49 Tex.Civ.App. 126, 107 S.W. 141 (Tex.Civ.App.1908, writ ref'd).

■ In the Riley family it was James Riley who determined the homestead for the family which included Billie Rae Riley, and this was the only family to which she then belonged. The matter of her intent to claim or abandon a homestead for herself was no longer decisive. Duncan v. Hand, 87 S.W. 233 (Tex.Civ.App.1905, no writ). In Wallingford v. Bowen, 104 S.W.2d 188,

190 (Tex.Civ.App.1937, no writ) this was the holding:

> It is our opinion that, when the appellee Hazel Bowen married Walter Bowen in 1934, and took her children by her former marriage into the home which he owned and for a number of years had been occupying as a home for himself and his twelve year old son and there established a family, she ipso facto abandoned the 200 acres of land involved in this suit as her homestead and that it then became subject to the judgment lien of appellant, Sam P. Wallingford. Under such circumstances, Bowen's homestead immediately became the homestead of his wife, Hazel Bowen. The two families immediately became one family and he became its head. As we view it, it is not a question of the intention on the part of Mrs. Bowen to abandon the rural property as a homestead. She actually accomplished that act when she became the wife of Walter Bowen and, with her children by the former marriage, took up her abode with him in his urban property at Perryton.

Walter Bowen's ownership of the Perryton home was relevant to the question of what he had chosen to be the home for the new family; but whether owned or not, the home was located by him and no homestead could be designated or retained otherwise.

It should not be said at this date that the wife can never be the head of a family and entitled to designate the family homestead. See generally, Anno., Wife as Head of Family Within Homestead or Other Property Exemption Provision, 67 A.L.R.2d 779, 789 (1959). Though times may change the frequency with which the traditional presumption may be overcome by the circumstances of a particular family, the presumption that the husband is the head of a family continues. There is no question in the present case but that James A. Riley is the head of the Riley family.

We make no decision as to whether the homestead exemption for the Leggett Drive property would have continued without an opportunity for the attachment of the judgment lien if James Riley had moved there at the time of the marriage and immediately made it the Riley family homestead. See Kirkwood v. Domnan, 80 Tex. 645, 16 S.W. 428 (1891); Chamlee v. Chamlee, 113 S.W. 2d 290 (Tex.Civ.App.1938, no writ); Fain-Townsend Co. v. Barker, 109 S.W.2d 1101 (Tex.Civ.App.1937, no writ).

No one in the Riley family held an intention to move that family to the Leggett Drive property at any time. Billie Rae Riley testified that they would have done so if she had known it would have been possible. This speculation only establishes the absence of an actual intention to live there. Nor was there any overt act of preparation evidencing a purpose to make this their home within a reasonable time. This state of the record explains the absence of any contention that the Riley family enjoyed homestead rights in the property. That being the case, Billie Rae Riley can enjoy none.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

STEAKLEY, Justice (dissenting).

The majority apparently would not deny that the homestead of the Harris family continued after the divorce of George D. Harris and Billie Rae Harris, with the latter as its head, by reason of her continued occupancy of the property with her minor child. See Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35 (1929). The holding is that this homestead was destroyed upon and because of the later marriage of Billie Rae Harris to James A. Riley. This is notwithstanding that it was neither shown nor claimed by the lienholders that Riley as the head of the Riley family had otherwise or elsewhere established a homestead. The majority reasons that the claim of the continuing existence of the Harris family homestead fails because there can be no homestead apart from the

Riley family. This would not be so if the head of the family surviving the divorce were the husband.

The claim of Billie Rae Riley is that the homestead of the family of which she was the head continued through her marriage to Riley until abandoned or otherwise displaced by a homestead of the Riley family. She is not, as the majority asserts, undertaking to "prove a homestead for the *Riley* family by showing the prior existence of the homestead of the *Harris* family." She is not claiming a homestead interest in the property for the Riley family. The existing homestead of the Billie Rae Harris family is presumed to continue and I would hold under the particular facts here that it was not displaced since it was not shown that Riley had established a homestead for his family. This comports with the liberal construction traditionally given our homestead laws.

Kirkwood v. Domnan, 80 Tex. 645, 16 S.W. 428 (1891) decided a related problem in the context of the marriage of a divorced wife who was residing upon homestead property of the former marriage and maintaining the minor children of that marriage. The property in question was community in which the first husband owned a one-half interest. After the divorce, the husband executed a deed of trust upon the property under which it was thereafter sold to his creditor, who brought suit for partition. In speaking of the situation after these events, it was stated by the Court that the wife "having a family, [i. e., from the first marriage] had a homestead interest in the one undivided half of the property that was owned by her; and that interest was protected from forced sale." [i. e., after the second marriage] In Chamlee v. Chamlee, 113 S.W.2d 290 (Tex.Civ.App.1938, no writ), a widow with two minor children established a homestead prior to her second marriage, which subsequently ended in divorce. There were no children born of the second marriage. The second husband sought foreclosure against the land constituting his former wife's homestead during her widowhood, upon the claim that her right to the homestead terminated upon dissolution of their childless marriage. The Court held that the prior homestead right continued during the second marriage and after its dissolution. See also In Re Hawthorne, 45 F.Supp. 374 (N.D.Tex.1942).

Petitioners appear to acknowledge that the remand ordered by the court of civil appeals to try the issue of abandonment must stand if it is held that the homestead exemption survived the remarriage of Billie Rae Harris. I would affirm this judgment.