**Affirmed and Memorandum Opinion filed February 11, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01114-CV

---

## JULIA ALMANZA, Appellant

## V.

## JOHNNY SALAS, RICARDO HINOJOSA AND ISABELLE M. HINOJOSA, Appellees

---

### On Appeal from the 80th District Court
### Harris County, Texas
### Trial Court Cause No. 2009-49728

---

## M E M O R A N D U M   O P I N I O N

An ex-wife appeals the trial court's judgment notwithstanding the verdict, asserting that residential property was not the ex-husband's homestead and that the property was, consequently, subject to her claims against the ex-husband for fraudulent conveyance of the property under the Uniform Fraudulent Transfer Act. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Julia Almanza and Johnny Salas were married and lived together in a residential property on May Street in Houston (the property). They divorced in August 2006. In the divorce decree, the property was awarded in fee simple to Johnny. About two months after the divorce, Johnny allegedly assaulted Julia. Johnny was indicted for aggravated assault of a family member and incarcerated in the Harris County Jail.

In November 2006, Julia filed a civil suit against Johnny for damages arising from the assault. Johnny was served with the civil suit while in jail. About two weeks after he was served with the lawsuit, Johnny signed a handwritten, notarized document agreeing to sell the property to his sister and brother-in-law, Isabelle and Ricardo Hinojosa, for $30,000. Over the next several months, Isabelle retained a lawyer to defend Johnny in the criminal case and paid Johnny's bond to secure his release from jail. On February 7, 2007, Johnny executed a general warranty deed conveying the property to the Hinojosas. In 2008, Johnny pleaded guilty to the criminal offense and was sentenced to eight years' imprisonment.

On June 30, 2009, the trial court in Julia's civil suit signed a judgment conforming to a jury verdict in Julia's favor, awarding Julia over $800,000.00 in damages against Johnny.[1] It is undisputed that the judgment remains an unsatisfied debt.

In August 2009, Julia filed a petition for declaratory judgment against Johnny and the Hinojosas, seeking declarations that (1) the February 7, 2007 deed transferring the property from Johnny to the Hinojosas is void and ineffective as to

---

[1] The trial court's judgment reflected that Julia was entitled to recover from Johnny actual damages of $525,000.00 plus prejudgment interest of $58,333.33, and punitive damages of $250,000.00. The trial court also awarded post-judgment interest on all damages at a rate of 5% per annum from the date of judgment until paid, and taxed all court costs against Johnny.

Julia, (2) the deed reflects a fraudulent conveyance between Johnny and the Hinojosas, (3) the property may be used to satisfy the judgment in the civil suit, (4) the property is not exempt from execution, and (5) the property may be levied upon to enforce the judgment in the civil suit. Along with a general denial, Johnny asserted an affirmative defense that the property was his homestead, and the Hinojosas sought reimbursement and contribution for expenses paid on the property.

A jury returned a verdict in favor of Julia, finding the following:

- Johnny transferred the property to the Hinojosas with actual intent to hinder, delay, or defraud Julia;
- Johnny transferred the property without receiving a reasonably equivalent value in exchange for the transfer while intending to incur, or believing he would incur, or while he reasonably should have believed that he would incur, debts beyond his ability to pay as they became due;
- the property was not Johnny's homestead; and
- the Hinojosas were not entitled to a credit for money they paid for the property or for expenses in maintaining the property.

Johnny and the Hinojosas moved for judgment notwithstanding the verdict (JNOV), asserting that a homestead exemption on the property precluded Julia's claims for fraudulent conveyance. In the final judgment, signed December 19, 2012, the trial court granted the JNOV motion, ruling that the property was exempt from creditors and fraudulent transfer claims because it was Johnny's homestead and Julia "did not offer more than a scintilla of evidence at trial to dispute the homestead characteristic of the property." Accordingly, the trial court rendered a take-nothing judgment in the defendants' favor.

In three issues, Julia challenges the trial court's JNOV, asserting that the trial court improperly disregarded the jury's finding that the property was not Johnny's homestead. She argues that there was no evidence that the property was Johnny's homestead before or after the couple divorced. Julia also argues that no legal presumption exists of a continuing homestead after divorce so as to relieve Johnny from presenting evidence of the homestead character of the property.

## I.   Did the Trial Court Err in Granting the JNOV?

In her first issue, Julia contends the trial court's grant of the motion for JNOV is proper only if it was shown as a matter of law that (1) the property was Julia and Johnny's family homestead before the divorce, and (2) the family homestead automatically converted into Johnny's single person homestead after the divorce. A trial court may grant a motion for JNOV if a directed verdict would have been proper, and it may disregard any jury finding on a question that has no support in the evidence. Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). We review a trial court's ruling on a motion for JNOV under a legal-sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004); *Wilson*, 168 S.W.3d at 810.

Julia alleged that Johnny fraudulently transferred the property to the Hinojosas to prevent Julia from using the property to satisfy the judgment she obtained against him in her civil suit and that she was entitled to relief under the

Uniform Fraudulent Transfer Act (UFTA). *See* Tex. Bus. & Com. Code §§ 24.001–.013. The UFTA is intended to prevent a debtor from defrauding his creditors by moving assets out of reach. *Arriaga v. Cartmill*, 407 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Julia, as the judgment creditor, has the burden to prove the fraudulent transfer of an asset by a preponderance of the evidence. *See Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A "transfer" is defined as any means of "disposing of or parting with an asset or an interest in an asset . . . ." Tex. Bus. & Com. Code § 24.002(12). An "asset" is "property of a debtor," but excludes "property to the extent it is generally exempt under nonbankruptcy law[.]" *Id.* § 24.002(2)(B).

Relevant here, real property qualifying as a homestead is property generally exempt under nonbankruptcy law. *See* Tex. Const. art. XVI, § 50; Tex. Prop. Code § 41.001(a). Therefore, judgment liens, even if properly abstracted, cannot attach to a homestead while that property remains a homestead. *Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 320 (Tex. App.—Austin 2009, no pet.). A judgment debtor may sell property claimed as homestead and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor. *Id.*; *Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied); *see also Chandler v. Welborn*, 294 S.W.2d 801, 805 (Tex. 1956) ("It is well settled that a conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors."). The rationale for this rule is that, because the law already has removed the homestead property from the reach of creditors, the conveyance of the property, whether fraudulent or not, does not deprive the creditors of any right they had against the property. *Duran v. Henderson*, 71 S.W.3d 833, 843 (Tex. App.—Texarkana 2002, pet. denied).

5

The parties agree that Johnny, as the party claiming the homestead exemption, has the initial burden of proving a homestead. *See Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972). To establish a property as a homestead, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). No specific writing or document is required to claim a homestead, and the act of using and enjoying the property as a home qualifies a person for the constitutional protections of homestead property. *Salomon v. Lesay*, 369 S.W.3d 540, 554 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Merritt*, 655 S.W.2d at 314; *see also Garrard v. Henderson*, 209 S.W.2d 225, 230 (Tex. Civ. App.—Dallas 1948, no writ) (stating that "the possession and use of real estate by one who owns it, and who, with his family, resides upon it, makes it the homestead of the family in law and in fact"). If the homestead character is established, the burden shifts to the creditor to disprove the continued existence of a homestead. *Duran*, 71 S.W.3d 842; *Merritt*, 655 S.W.2d at 314. Further, a former spouse not in possession has no homestead rights in the property. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991).

## II. Evidence that the Property was Johnny and Julia's Homestead Before the Divorce.

Julia first argues that Johnny presented no evidence that the property was his homestead before their divorce. To support the claim that the property was a homestead, Johnny and the Hinojosas offered county property tax records and appraisal district valuations of the Property for the years 2005, 2006, and 2007. These exhibits reflect that in 2005 and 2006, Johnny and Julia claimed a homestead exemption on the property, and in 2007, the Hinojosas claimed a homestead exemption on the property. According to Julia, these documents are no

evidence that Johnny properly claimed a homestead exemption as contemplated by the property and tax codes, and even if they are, they are not dispositive and at most merely raise a fact issue concerning whether the property was a homestead, particularly in light of the divorce, the assault, Johnny's incarceration, and the timing of the sale to the Hinojosas.

Contrary to Julia's assertion, the county tax documents reflecting that Johnny and Julia claimed a homestead exemption on the property in 2005 and 2006 are some evidence that she and Johnny considered the property as their homestead. *See Salomon*, 369 S.W.3d at 550 (stating that "filing an official designation of a homestead with the county clerk provides prima facie evidence of intent to claim property as a homestead and puts the world on notice to that effect"). Moreover, the tax documents were not the only evidence presented at trial concerning the homestead character of the property. Although the majority of the trial focused on the timing of the sale of the property and its value, Julia also testified that she and Johnny were married for nine years, they had children together, they purchased the property while they were married, they made extensive renovations to the property, and she lived there with Johnny until sometime in 2005. The act of using and enjoying property as a home qualifies a person for the constitutional protections of homestead property. *See id.* at 554; *Merritt*, 655 S.W.2d at 314. Moreover, the courts have always given a liberal construction to the Texas Constitution and statutes to protect homestead rights. *Merritt*, 655 S.W.2d at 314. Taken together, Julia's testimony that she and Johnny lived in the property together and the evidence that they formally claimed it as their homestead establishes that the property was Julia and Johnny's homestead before the divorce, and the record reveals no contrary evidence.

### III. A Homestead is Presumed to Continue Absent Contrary Evidence.

Next, Julia argues that even if she and Johnny had a family homestead before the divorce, to affirm the trial court's grant of the motion for JNOV, this court must conclude that a legal presumption exists that the property "automatically converted into Johnny's single person homestead after the divorce," because Johnny offered no evidence that the property continued to be his homestead post-divorce. According to Julia, no such legal presumption exists, and therefore the burden never shifted to her to disprove a homestead.

Constitutional homestead rights protect citizens from losing their homes and have historically enjoyed great protection in our jurisprudence. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 807 (Tex. App.—Austin 2004, pet. denied). Once homestead rights are shown to exist in a property, they are presumed to continue in the absence of evidence to the contrary. *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971); *Merritt*, 655 S.W.2d at 314. Property may lose its homestead character only by the claimant's death, abandonment, or alienation. *Synnott*, 300 S.W.3d at 321; *Garrard*, 209 S.W.2d at 229. Moreover, a claimant's homestead rights may continue following divorce if the claimant initially proves the existence of the homestead. *See Burk Royalty Co.*, 475 S.W.2d at 568; *McFarland v. Rousseau*, 667 S.W.2d 929, 932 (Tex. App.—Corpus Christi 1984, no writ); *see also* Tex. Const. art. XVI, § 50(a) (providing that "[t]he homestead of a family, *or of a single adult person*, shall be, and is hereby protected from forced sale, for the payment of all debts" not specifically enumerated) (emphasis added).

Julia testified that, shortly before the divorce in 2006, she executed a quitclaim deed to Johnny disclaiming any right or title to the property, explaining that she did so because she "didn't want the house." The divorce decree also

awarded the property to Johnny as his sole and separate property. Thus, the undisputed evidence shows that Julia relinquished any claim she had to the homestead while Johnny retained his homestead interest both before and after the divorce. *See Salomon*, 369 S.W.3d at 555; *Synnott*, 300 S.W.3d at 321. Therefore, the initial homestead presumption coupled with the undisputed evidence that Johnny was awarded all right, title, and interest in the property, shifted the burden to Julia to prove Johnny intended to abandon it. *See Burk Royalty Co.*, 475 S.W.2d at 568.[2]

To establish the abandonment of a homestead, the evidence relied on must make it "undeniably clear" that there has been "a total abandonment with an intention not to return and claim the exemption." *McFarland v. Rousseau*, 667 S.W.2d at 932. Further, the abandonment must be voluntary. *Driver v. Conley*, 320 S.W.3d 516, 519 (Tex. App.—Texarkana 2010, pet. denied). Julia relies on the following evidence to show that a homestead did not continue after the divorce: Johnny assaulted Julia two months after the divorce; Johnny and Isabelle discussed using the house as collateral to pay legal bills after the assault; Johnny gave Isabelle a general power of attorney while in jail and shortly thereafter was served with Julia's civil suit; after being served, Johnny executed a handwritten, notarized document indicating his desire to sell the property to Isabelle for $30,000; Johnny filed a pro se answer in the civil suit; on February 7, 2007, Johnny signed a deed conveying the property to the Hinojosas; Johnny and Isabelle gave "inconsistent and amorphous" explanations at trial about the timing and details of the conveyance; and Johnny testified that he currently resided in prison.

Although the facts Julia recites may be relevant to her allegation that

---

[2] We therefore distinguish Julia's reliance on *Day v. Day*, 610 S.W.2d 195, 198 (Tex. App.—Tyler 1980, writ ref'd n.r.e.), because in that case, the claimant failed to meet the initial burden of establishing the existence of a homestead before the divorce.

Johnny's transfer of the property to the Hinojosas was fraudulent as to her, they are no evidence that Johnny intended to abandon or otherwise alienate his homestead before the transfer. *See* Tex. Bus. & Com. Code § 24.005(a); *Synnott*, 300 S.W.3d at 320; *see also Driver*, 320 S.W.3d at 519–20 (noting that a homestead claimant's transfer of nonexempt property had "no bearing on the issue of abandonment of homestead"). Further, Johnny's incarceration while serving his prison sentence is not evidence of a voluntary abandonment of the homestead. *See Driver*, 320 S.W.3d at 519; *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App.—Austin 2006, pet. denied).

## CONCLUSION

On these facts, we conclude that the trial court did not err in granting the defendants' motion for JNOV. We therefore overrule Julia's three issues on appeal and affirm the trial court's judgment.

/s/ Ken Wise
Justice

Panel consists of Justices McCally, Busby, and Wise.